09-3193-cv
County of Nassau, NY v. Leavitt

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: April 19, 2010                    Decided: May 24, 2010)

Docket No. 09-3193-cv

COUNTY OF SUFFOLK, NEW YORK, FEDERATION EMPLOYMENT AND GUIDANCE
SERVICES, INC., LONG ISLAND MINORITY AIDS COALITION, INC., THURSDAY'S
CHILD, INC., TRACI BOWMAN, MIRIAM SPAIER, JEROME KNIGHT, and DONNA
UYSAL,

*Plaintiffs,*

COUNTY OF NASSAU, NEW YORK,

*Plaintiff-Appellant,*

–v.–

KATHLEEN SEBELIUS, in her official capacity as Secretary of
Health and Human Services of the United States Department of
Health and Human Services, MARY WAKEFIELD, Ph.D., R.N., in her
official capacity as Administrator for the Health Resources
and Services Administration of the United States Department
of Health and Human Services, and UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

*Defendants-Appellees.*[*]

_____

[*] The Clerk of the Court is respectfully directed to amend the official
caption of this action to conform to the caption of this opinion.

Before: CABRANES, WESLEY, and LIVINGSTON, *Circuit Judges*.

Appeal from a May 22, 2009 order of the United States District Court for the Eastern District of New York (Seybert, J.), which dismissed plaintiffs' claims as moot. We hold that, because the congressional appropriations at issue have been exhausted by the federal agency named as a defendant in this action, no justiciable Article III controversy remains.

AFFIRMED.

---

PETER J. CLINES, (Rosanne M. Harvey, *on the brief*), Deputy County Attorneys, *for* Lorna B. Goodman, County Attorney, County of Nassau, Mineola, NY, *for Plaintiff-Appellant*.

THOMAS A. MCFARLAND, (Varuni Nelson, *of counsel*), Assistant United States Attorneys, *for* Benton J. Campbell, United States Attorney, Eastern District of New York, Central Islip, NY, *for Defendants-Appellees*.

---

WESLEY, *Circuit Judge*:

In this action brought pursuant to § 702 of the Administrative Procedure Act, plaintiffs seek additional funding for fiscal years ("FYs") 2007 and 2008 from a grant program administered by the Department of Health and Human Services ("HHS") pursuant to the Ryan White HIV/AIDS Treatment Modernization Act of 2006. In a previous appeal relating to plaintiffs' application for a preliminary

2

injunction, we held that they had demonstrated a likelihood of success on the merits. On remand, defendants moved to dismiss plaintiffs' claims, arguing that HHS had awarded the funds at issue to other grant recipients. The district court verified that the pertinent congressional appropriations had, in fact, been exhausted, and held that plaintiffs' claims are moot.

Despite the seemingly harsh result, we agree with the district court. Obliged, as we are, to avoid issuing advisory opinions, our authority is limited to "live" cases in which there remains a possibility that the court can grant some form of effectual relief. In an action such as this one, the scope of available relief is bookended by the government's sovereign immunity, on the one hand, and the Appropriations Clause of the Constitution, on the other. Where, as here, the congressional appropriations relating to the funds sought by private litigants have been lawfully distributed — and therefore exhausted — by a federal agency, courts lack authority to grant effectual relief in the context of an Article III case or controversy. Under such circumstances, any decision on the ultimate merits of the dispute would be merely advisory, and the claims at issue

are moot.  Accordingly, we affirm.

## I.  BACKGROUND

Congress passed the Ryan White Comprehensive AIDS Resources Emergency Act of 1990 (the "Ryan White Act," or the "Act"), Pub. L. No. 101-381, 104 Stat. 576, in order to make funding available for the development and administration of "cost efficient systems for the delivery of essential services to individuals and families with HIV disease."  42 U.S.C. § 300ff.[1]  Part A of the Act, titled "Emergency Relief for Areas with Substantial Need for Services," directed HHS to award grants to localities that qualified as "Eligible Metropolitan Areas," or "EMAs."  Pub. L. No. 101-381, pt. A, § 2601, 104 Stat. at 576; *see also* 42 U.S.C. § 300ff-11 (1991) (original definition of "EMA"). HHS awarded grants to New York's Nassau and Suffolk Counties ("Nassau-Suffolk") as a single EMA in each year through FY 2006.

Fiscal year 2007 began on October 1, 2006.  Almost three months later, on December 19, 2006, Congress amended

---

[1] Unless otherwise noted, all statutory citations are to the current version of the U.S. Code.  For additional discussion of the amendments to the Ryan White Act and the history of plaintiffs' grant funding, see *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 411-13 (2d Cir. 2008).

the Ryan White Act by creating a second category of funding-eligible entities, referred to as "Transitional Grant Areas" or "TGAs," which were to receive less funding than EMAs. Ryan White HIV/AIDS Treatment Modernization Act of 2006, Pub. L. No. 109-415, § 107, 120 Stat. 2767, 2781; *see also* 42 U.S.C. § 300ff-19. The amendments took effect in FY 2007 and contained a sunset provision that repealed the Act effective October 1, 2009. *See County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 416 (2d Cir. 2008).[2]

HHS typically begins to notify recipients of grants under Part A of the Ryan White Act on March 1 of each fiscal year. With respect to FY 2007, however, the agency informed Nassau-Suffolk on February 12, 2007 that it would be classified as a TGA, rather than an EMA, based on the 2006 amendments to the Act. On February 27, 2007, a group of plaintiffs that included Nassau-Suffolk commenced this action to challenge HHS's decision pursuant to § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.[3]

---

[2] Congress revived the Ryan White Act grant program on October 31, 2009 by enacting the Ryan White HIV/AIDS Treatment Extension Act of 2009, Pub. L. No. 111-87, 123 Stat. 2885.

[3] In addition to Nassau and Suffolk Counties, the plaintiffs in the district court included private entities

5

Plaintiffs argued that HHS had incorrectly classified Nassau-Suffolk as a TGA, and sought declaratory and injunctive relief directing the agency to return the entity to the EMA funding category. The district court denied plaintiffs' application for a preliminary injunction on March 1, 2007. *County of Nassau, N.Y. v. Leavitt*, No. 07 Civ. 816, 2007 WL 708321, at *4 (E.D.N.Y. Mar. 1, 2007).

Following that decision, plaintiffs filed an interlocutory appeal with this Court, *see* 28 U.S.C. § 1292(a)(1), as well as a motion for an injunction pending appeal, *see* Fed. R. App. P. 8.[4] We denied the motion for injunctive relief on May 4, 2007. Almost a year later, however, we reversed the district court and held that plaintiffs had established a likelihood of success on the merits of their claims. *See Leavitt*, 524 F.3d at 419.

in those counties that use Ryan White Act funds to administer HIV- and AIDS-related services, as well as individuals who utilize those services. Although only Nassau County filed a notice of appeal in this action, we use the plural form, "plaintiffs," for purposes of clarity.

[4] In plaintiffs' motion for an injunction pending their appeal, they did not argue that irreparable harm was threatened by the possibility that HHS would exhaust the appropriations at issue. (*See* Decl. in Support of Plaintiffs-Appellants Mot. for an Expedited Appeal at 5-10, *County of Nassau, N.Y. v. Leavitt*, No. 07-0825-cv (2d Cir. Mar. 14, 2007).)

On remand, HHS conceded that Nassau-Suffolk was to be funded as an EMA in FY 2009, but defendants moved to dismiss plaintiffs' claims relating to FYs 2007 and 2008 as moot. Defendants' argument was simple:  no relief was available because HHS had distributed the funds that were appropriated by Congress for those fiscal years to other EMAs.  The district court expressed concern about the "extreme consequences of holding that Plaintiffs' claims for the 2007 and 2008 fiscal years are moot," and it denied the motion without prejudice in order to examine whether HHS had, in fact, exhausted the appropriations for FYs 2007 and 2008.

Defendants then submitted an April 16, 2009 declaration from Douglas H. Morgan, the director of the HHS division that administers the grant program.  The affidavit stated that, with respect to FYs 2007 and 2008, "[n]o remaining . . . funds appropriated by Congress . . . are available for obligation by HHS."  Based on that submission, the district court dismissed plaintiffs' claims as moot, reasoning that it "lack[ed] authority" to "create . . . special funding or re-organize their scheduled distributions for the upcoming years."

## II. DISCUSSION

We review *de novo* the district court's conclusion that plaintiffs' claims are moot. *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 128 (2d Cir. 2008). On appeal, plaintiffs mount a two-front attack on the lower court's decision. First, they argue that "the absence of funding did not absolve the government of its statutory obligations" under the Ryan White Act, and that the district court "still had the authority and power to enter a judgment declaring [defendants] liable for the additional Ryan White [Act] funds that should have been awarded" in FYs 2007 and 2008. Second, plaintiffs contend that the district court also erred by holding that they could not seek compensation from the appropriation created by the Judgment Fund, 31 U.S.C. § 1304(a). At bottom, however, both of these arguments fail to account for the limitations on this action resulting from the federal government's sovereign immunity and the Appropriations Clause. Accordingly, for the reasons set forth below, we hold that plaintiffs' claims are moot.

Article III of the Constitution limits federal courts' authority — that is, our subject matter jurisdiction — to disputes involving "live cases and controversies." *United*

8

*States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005). A number of justiciability doctrines govern the contours of this power; pertinent here is mootness, which concerns when and whether a case is "live." Specifically, under the "general rule" of mootness, courts' subject matter jurisdiction ceases when "an event occurs during the course of the proceedings or on appeal 'that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.'" *Id.* (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).[5]

An understanding of why plaintiffs' claims are moot requires an understanding of the scope of the relief that was available to them in the first instance in this action against HHS and federal employees in their official capacities. Absent an "unequivocally expressed" statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity.

---

[5] Although there is an exception to this "general rule" where a dispute is "capable of repetition, yet evading review," *Quattrone*, 402 F.3d at 309 (internal quotation marks omitted), it is inapplicable here in light of, *inter alia*, HHS's decision to fund Nassau-Suffolk as an EMA during FY 2009. *See City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1427 (D.C. Cir. 1994).

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999). "This may leave some aggrieved parties without relief, but that is inherent in the doctrine of sovereign immunity." *Adeleke v. United States*, 355 F.3d 144, 150-51 (2d Cir. 2004).

In this case, plaintiffs escaped this bar by invoking § 702 of the APA, 5 U.S.C. § 702, in which Congress enacted a limited waiver of the federal government's sovereign immunity for claims of "legal wrong [sustained] because of agency action . . . seeking relief other than money damages." *Id.* The "agency action" plaintiffs challenge is HHS's February 2007 decision to reclassify Nassau-Suffolk as a TGA under the 2006 amendments to the Ryan White Act, and they argue that they are legally entitled to funding as an EMA during FYs 2007 and 2008. And, as the district court understood, § 702 limited the scope of the available relief in such an action from its inception. Plaintiffs therefore could only seek relief "*other than money damages*." *Id.* (emphasis added).[6]

---

[6] Although there are, of course, additional instances in which Congress has waived the federal government's sovereign immunity for other types of claims, plaintiffs have not invoked any of them.

10

In this regard, careful attention must be paid to the meaning of "money damages" in § 702. "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (quoting 5 U.S.C. § 702). Rather, in this context, the term "money damages" refers to compensatory relief that functions as a substitute for lost property. *See id.* at 895; *see also Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994). Thus, "sovereign immunity bars [plaintiffs] from seeking [monetary] compensation" under § 702. *Diaz v. United States*, 517 F.3d 608, 612 (2d Cir. 2008). As such, § 702 only functions as an effective waiver of the government's sovereign immunity to the extent that plaintiffs seek to force HHS to return property to Nassau-Suffolk, where the *res* at issue is the funds appropriated by Congress for this grant program for FYs 2007 and 2008.

Analytically speaking, the fungibility often associated with money obscures, to some extent, the distinction between: (1) relief that seeks to *compensate* a plaintiff for a harm by providing a *substitute* for the loss, which is unavailable in an action under § 702; and (2) relief that

11

requires a defendant to transfer a specific *res* to the plaintiff. *See Diaz*, 517 F.3d at 612. But where the object of a plaintiff's claims is the public fisc, the Appropriations Clause of the Constitution puts things in perspective: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. In other words, "'no money can be paid out of the Treasury unless it has been appropriated by an act of Congress.'" *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). Thus, in cases challenging an agency's expenditure of funds, the *res* at issue is identified by reference to the congressional appropriation that authorized the agency's challenged expenditure. To seek funds from another source is to seek compensation rather than the specific property the plaintiff aims to recover. A claim seeking the former type of relief falls outside the scope of the waiver of sovereign immunity arising from § 702 of the APA.

To our knowledge, our sister Circuit in the District of Columbia is the only federal appellate court that has confronted this juxtaposition of sovereign immunity and the

12

Appropriations Clause under the circumstances presented by this case.[7]  In *City of Houston v. Department of Housing & Urban Development*, 24 F.3d 1421 (D.C. Cir. 1994), Houston challenged the decision of the Department of Housing and Urban Development ("HUD") to reduce its FY 1986 community development block grant.  Before Houston commenced the action, however, two events occurred:  (1) HUD awarded the funds at issue to other grant recipients, thereby exhausting

[7] Contrary to plaintiffs' assertion, we did not address these issues in *Aetna Casualty & Surety Co. v. United States*, 71 F.3d 475 (2d Cir. 1995).  In *Aetna*, we simply held that it would not have been *futile* for the plaintiff-appellant to amend its pleading in the district court to add a claim pursuant to § 702 of the APA.  *See id.* at 478-79. Although the government asserted that the plaintiff's claims relating to a tax refund were moot because it had paid the refund to another entity, we were in no position to address — as the district court did in this case — the factual issue of whether the relevant appropriation had been exhausted. Moreover, our statement in *Aetna* that the government's "duty" to pay the tax refund did "not disappear simply because the money was paid in error to the wrong person," *id.* at 479, is not inconsistent with the notion, which is applicable here, that a federal court may lack authority to adjudicate the requirements of a duty in a given case. Finally, as discussed *infra*, unlike the judgment that plaintiffs seek in this case, it appears that there was an available, unexhausted appropriation for the judgment the plaintiff sought:  "[t]ax refund judgments are payable from the permanent, indefinite appropriation" codified at 31 U.S.C. § 1324.  *See* Gov't Accountability Office, 3 *Principles of Federal Appropriations Law* (hereinafter, "GAO, *Principles*"), at 14-40 (3d ed. Sept. 2008), *available at* http://www.gao.gov/special.pubs/d08978sp.pdf.

the relevant FY 1986 appropriation; and (2) the FY 1986 appropriation authorizing the grants expired and therefore lapsed.[8]  *See id.* at 1425.  The D.C. Circuit held that these events served as "two independent grounds" for dismissing Houston's claims.  *Id.* at 1427.  "[T]o avoid having its case mooted, a plaintiff must both file its suit before the relevant appropriation lapses *and* seek a preliminary injunction preventing the agency from disbursing those funds."  *Id.* (emphasis in original).  The court reasoned that, when a litigant fails to take either step, "federal courts are without authority to provide monetary relief" because the Appropriations Clause prevents additional funds from being paid out of the Treasury.  *Id.* at 1428.  It reasoned further that awarding "funds available from sources

---

[8] In *City of Houston*, the D.C. Circuit acknowledged a narrow exception that, under some circumstances, "permits a court to award funds based on an appropriation even after the date when the appropriation *lapses*, so long as 'the lawsuit was instituted *on or before that date*.'"  *City of Houston*, 24 F.3d at 1426 (first emphasis added) (quoting *W. Va. Ass'n of Cmty. Health Ctrs. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984)).  Importantly, however, "[a]pplication of this equitable doctrine . . . assumes that funds remain after the statutory lapse date."  *W. Va. Ass'n of Cmty. Health Ctrs.*, 734 F.2d at 1577.  In any event, because this appeal does not require us to consider the implications of lapsed — as opposed to exhausted — appropriations, we do not now pass on the availability of the exception referenced in *City of Houston*.

14

other than the 1986 appropriation" would contravene the "fundamental requirement" of § 702 of the APA "that a plaintiff seek relief '*other than money damages*.'" *Id.* (emphasis in original) (quoting 5 U.S.C. § 702).

Under *City of Houston*, which we now follow, plaintiffs' claims are moot. In so holding, we are mindful that, unlike in *City of Houston*, plaintiffs in this case sought to enjoin HHS's expenditure of the funds for FYs 2007 and 2008 before HHS exhausted the relevant appropriations. Thus, whereas the *City of Houston* plaintiff could be faulted for failing to act, plaintiffs here took action but were unable to preserve the status quo. As a result, while the claims in *City of Houston* were moot at the time they were filed, plaintiffs' claims became moot, despite their efforts, during the course of this litigation. Unfortunately, however, these are distinctions without a difference for purposes of the mootness doctrine. Although the *City of Houston* court indicated that a plaintiff must "seek a preliminary injunction," *id.* at 1427, its analysis applies with equal force where a plaintiff attempts, but ultimately fails, to enjoin an agency's expenditures. Our analysis turns on the fact that, irrespective of the status of these

15

appropriations when the action was commenced, HHS had exhausted them by the time the proceedings were remanded.[9] After this was verified by the district court, the only option "remaining to the court [was] that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

Plaintiffs seek to evade the holding of *City of Houston* by arguing that, notwithstanding HHS's exhaustion of the appropriations at issue, their claims are not moot because they could collect on a judgment from the appropriation in the Judgment Fund, 31 U.S.C. § 1304(a). The Judgment Fund is a "permanent, indefinite appropriation for the payment of judgments." GAO, 3 *Principles*, *supra* note 7, at 14-31. But the availability of this appropriation has limits. It "constitutes an appropriation of amounts sufficient to pay 'final judgments . . . and interest and costs,'" *id.* at 14-

---

[9] This holding is no broader than the facts of the case before us. There is no indication in the record that HHS distributed Ryan White Act grant funding to other entities that were wrongly classified as EMAs, or that the agency disregarded any legal obligation to avoid dispensing the funds at issue. Nor are we in a position to pass on the veracity of plaintiffs' assertion that HHS "clearly had time and opportunity to issue or hold back funds." At this point, that is a matter that can only be addressed by resort to the political branches.

16

32, *only* when the sought-after payment is: (1) "not otherwise provided for" by law; (2) "certified by the Secretary of the Treasury"; and (3) payable under, *inter alia*, 28 U.S.C. § 2414 (relating to final judgments entered by federal district courts). 31 U.S.C. § 1304(a).

Moreover, the Judgment Fund does not waive the government's sovereign immunity, and "the legal basis for a judgment or award must be found elsewhere in the law." GAO, 3 *Principles*, at 14-34. As noted above, because plaintiffs rely on the government's waiver of its sovereign immunity in § 702 of the APA, the only available remedy is an injunction directing HHS to fund Nassau-Suffolk as an EMA in FYs 2007 and 2008 from the appropriations that were authorized by Congress for those years. Money from the Judgment Fund, by contrast, would function as a substitute remedy to compensate plaintiffs for losses they suffered during FYs 2007 and 2008. Such a remedy would constitute "money damages" within the meaning of that term in § 702 of the APA, and the government has not waived its sovereign immunity with respect to such claims.[10] In light of this

---

[10] The GAO has previously taken the position that "monetary awards made under the APA and other equitable authorities should be treated no differently than other

17

immunity, the district court lacked authority to grant relief based on the Judgment Fund.

Finally, even if defendants had waived their immunity, the Judgment Fund's appropriation would not be available because the statute's first requirement — that the payment sought must not be "otherwise provided for," 31 U.S.C. § 1304(a)(1) — is not satisfied. "There is only one proper source of funds in any given case." GAO, 3 *Principles*, at 14-40. In this case, that source is the congressional appropriations for FYs 2007 and 2008 relating to Part A of the Ryan White Act. Where, as here, "payment of a particular judgment is otherwise provided for as a matter of

monetary awards when being considered for payment from . . . the Judgment Fund." GAO, 3 *Principles*, at 14-20 n.47 (citing GAO, *In re Judgment Fund & Law Enforcement Seizure Claims*, B-259065 (Dec. 21, 1995)). We look to the GAO for authority given its role as "the investigative arm of Congress." *Med. Soc'y of N.Y. v. Cuomo*, 976 F.2d 812, 815 (2d Cir. 1992); *see also* Kate Stith, *Congress' Power of the Purse*, 97 Yale L.J. 1343, 1390 (1988) ("While the judicial branch is not bound by the GAO determinations . . . these determinations have been accorded significant deference by courts."). However, this authority (understandably) offers no view on what are antecedent questions relating to when and whether a court has authority to make "monetary awards under the APA" in the first place. In fact, in the same publication the GAO acknowledged that "[t]he Judgment Fund is not itself a waiver of sovereign immunity." GAO, 3 *Principles*, at 14-34. Therefore, our sovereign immunity analysis does not conflict in any way with the GAO's position.

law, the fact that the defendant agency has insufficient funds at that particular time does not operate to make the Judgment Fund available." *Id.* at 14-39. We are persuaded by the GAO's construction of the operative statutory phrase, and therefore conclude that the appropriations relating to the funds plaintiffs seek *are* "otherwise provided for," 31 U.S.C. § 1304(a)(1). Consequently, insofar as the Judgment Fund is concerned, defendants are entitled to sovereign immunity and the statutory prerequisites for access to this appropriation are not satisfied. Therefore, we hold that this alternative appropriation is unavailable as a funding source for the remedy plaintiffs seek.

### III. CONCLUSION

Defendants acknowledge that, based on our prior interpretation of the statute, *see Leavitt*, 524 F.3d at 414, HHS misapplied the Ryan White Act's 2006 amendments to Nassau-Suffolk. There is no dispute that Nassau-Suffolk has now been properly funded as an EMA during FY 2009. There is also no dispute that, by the time this action was remanded to the district court, HHS had exhausted the congressional appropriations relating to FYs 2007 and 2008 of the Ryan White Act grant program. However, in light of defendants'

19

sovereign immunity and the Appropriations Clause, resort to those appropriations was the only remedy available to plaintiffs for their claims.  We therefore hold that plaintiffs' claims relating to FYs 2007 and 2008 are moot because no effectual relief may be granted.

Like the district court, we too are aware of the consequences of the result that we now announce.  The principles that govern this appeal, however, stem from the very foundation of our institutional authority.  As a court of limited jurisdiction, we are not free to exceed the bounds of the legal framework that governs our operation.  Accordingly, we affirm the judgment of the district court dismissing plaintiffs' claims.