# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: September 22, 2014    Decided: February 18, 2015)

Docket No. 13-3087

------------------------------------------------------------X

COUNTY OF WESTCHESTER,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
SHAUN L.S. DONOVAN, AS SECRETARY OF HUD,

*Defendant-Appellees*.

------------------------------------------------------------X

Before: LEVAL, CHIN, and CARNEY, *Circuit Judges*:

The County of Westchester ("the County") appeals from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*) dismissing the County's claims against the U.S. Department of Housing and Urban Development ("HUD") on the grounds that HUD's actions are not subject to judicial review. The County sued HUD under the Administrative Procedure Act, alleging that HUD acted in an arbitrary and capricious manner in rejecting submissions the County made to obtain certain HUD-administered grant funds. The Court of Appeals (Leval, *J.*) concludes that HUD's rejection of the County's submissions is not a matter "committed to agency discretion by law." Accordingly, the judgment dismissing the County's suit as not subject to judicial review is VACATED. The Court of Appeals AFFIRMS the dismissal of certain of the County's claims as moot, insofar as the County seeks relief with respect to certain grant funds that have already been reallocated to other jurisdictions. The matter is REMANDED.

ROBERT F. MEEHAN, Westchester County Attorney (James Castro-Blanco, Linda M. Trentacoste, Adam Rodriguez, Justin R. Adin, *on the brief*), White Plains, NY, for *Appellant*

DAVID J. KENNEDY, Assistant United States Attorney (Benjamin H. Torrance, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, for *Appellees*

LEVAL, *Circuit Judge*:

The County of Westchester ("the County") appeals from the judgment of the United States District Court for the Southern District of New York (Cote, *J.*) dismissing the County's suit against the U.S. Department of Housing and Urban Development ("HUD") for lack of jurisdiction. The County sued HUD alleging that the agency acted in an arbitrary and capricious manner by rejecting the County's fiscal year ("FY") 2011 Action Plan and certification that it would affirmatively further fair housing, which the County submitted to obtain certain HUD-administered grants. The district court ruled that HUD's rejection of the County's submissions was an act "committed to agency discretion by law," *see* 5 U.S.C. § 701(a)(2), and thus not subject to judicial review under the Administrative Procedure Act ("APA").

We conclude that HUD's actions are not "committed to agency discretion by law" so as to render them unreviewable, because the statutes governing HUD's administration of the relevant grant programs provide meaningful standards against which to judge HUD's exercise of discretion. Accordingly, we vacate the judgment which dismissed the

County's APA claims as not subject to judicial review under the APA. We affirm the dismissal of certain of the County's claims as moot, insofar as the County seeks relief with respect to certain grant funds that have already been reallocated to other jurisdictions.

**BACKGROUND**

**I.      The 2006 Lawsuit**

In order to obtain certain HUD-administered grants, the County[1] is required to submit annual Action Plans detailing how the County will use the grant funding. 24 C.F.R. §§ 91.15, 91.220. Along with the Action Plan, the County must certify that the County will "affirmatively further fair housing." 42 U.S.C. §§ 5304(b)(2), 12705(b)(15); 24 C.F.R. § 91.225(a)(1). Under HUD regulations, this means the County must "conduct an analysis to identify impediments to fair housing choice within the jurisdiction" (an "analysis of impediments," or "AI") and "take appropriate actions to overcome the effects of any impediments identified through that analysis." 24 C.F.R. § 91.225(a)(1).

In 2006, the Anti-Discrimination Center of Metro New York filed a *qui tam* action against the County under the False Claims Act, 31 U.S.C. §§ 3729-33, alleging that the County had filed false certifications with HUD to obtain millions of dollars in grant

---

[1] The County applies for and administers these HUD grants on behalf of the Westchester Urban County Consortium, a collection of towns and villages that have entered into a cooperation agreement to jointly apply for the HUD funds through the County. For ease of reference, we refer to the County's submissions on behalf of the consortium as "the County's" submissions.

funding. *U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, 712 F.3d 761, 765 (2d Cir. 2013) ("*Westchester 2013 Ct. App.*"). The suit alleged that the County's certifications were false because the County had failed to conduct a meaningful analysis of impediments or take steps to overcome barriers to fair housing caused by racial discrimination and segregation.

In 2009, HUD intervened in the action, and HUD and the County agreed to a Stipulation and Order of Settlement and Dismissal ("the consent decree"). Under the consent decree, the County was required to pay $30 million to the United States and to take numerous steps to further fair and affordable housing within its jurisdiction. Most relevant to this appeal, the County agreed to conduct a new AI analyzing impediments to fair housing and identifying actions the County would take to overcome those impediments. The consent decree required that the AI be "deemed acceptable by HUD." Joint App'x ("JA") at 98. The County also agreed to "promote, through the County Executive, legislation . . . to ban 'source-of-income' discrimination in housing." JA at 99.[2] The consent decree provided for the appointment of a monitor and established a dispute resolution process whereby the parties could submit grievances to the monitor for resolution.

---

[2] "Source-of-income legislation bans housing discrimination based upon an individual's source of income, primarily whether an individual's lawful income comes in the form of Social Security benefits or any form of state or federal public assistance, including Section 8 vouchers." *Westchester 2013 Ct. App.*, 712 F.3d at 766.

## II.     The County's AI Submissions

In July 2010, the County submitted an AI to HUD pursuant to the consent decree. HUD rejected the AI, identifying multiple deficiencies for the County to address. In April 2011, having not yet received a revised AI, HUD notified the County that it intended to reject the County's FY 2011 certification that the County would affirmatively further fair housing ("fair housing certification") due to the inadequate AI. In response, the County submitted a revised AI, which HUD also found deficient. HUD then formally rejected the County's fair housing certification and accordingly disapproved the County's FY 2011 Action Plan as "substantially incomplete." JA 125. HUD identified a series of corrective actions the County could take to win HUD's approval of the AI and obtain its FY 2011 formula allocations under the relevant grant programs. Among other steps, HUD notified the County that it was required to commit to taking certain actions to promote source-of-income legislation, and that it was obligated to develop a detailed strategy to address specified restrictive zoning practices.

After the County submitted and HUD rejected yet another AI, the parties referred their dispute over the AI to the monitor for resolution. In November 2011, the monitor issued a Report and Recommendation concluding that the County was obligated under the consent decree to analyze the impact of specified restrictive zoning practices and to develop a clear strategy for overcoming exclusionary zoning within its jurisdiction. The monitor also determined that the County had breached its obligation under the consent decree to promote source-of-income legislation. The parties sought review of the

monitor's decision, and the district court upheld the monitor's report. *U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, No. 06 Civ. 2860(DLC), 2012 WL 1574819, at \*11 (S.D.N.Y. May 3, 2012) ("*Westchester 2012 Dist. Ct.*").

Following the monitor's ruling, the County submitted a series of zoning analyses to HUD, all of which HUD rejected. HUD informed the County that its submissions contained flawed data analysis, failed to address whether zoning practices were exclusionary under state and federal case law, and lacked adequate strategies for bringing about change in municipalities with problematic zoning practices.

In March 2013, HUD notified the County that it intended to reallocate the approximately $7.4 million in funds that had been allocated to the County for FY 2011 under the Community Development Block Grant ("CDBG"), HOME Investment Partnership ("HOME"), and Emergency Shelter Grant ("ESG") programs. The FY 2011 appropriation for these funds was set to expire by statute on September 30, 2013. HUD gave the County until April 25, 2013 to submit a satisfactory zoning analysis and plan to overcome exclusionary zoning. One day before the deadline, the County submitted a lengthy revised AI and also filed suit against HUD in federal court. After continuing to reject the County's submissions as inadequate, HUD ultimately reallocated the vast majority of the County's FY 2011 grant allocation.

**PROCEDURE**

The County filed suit against HUD in the Southern District of New York on April 24, 2013, asserting claims under the Administrative Procedure Act ("APA") and 42 U.S.C. § 12711, which restricts HUD interference with lawful local housing policies.[3] As relief, the County asked the court to enjoin the reallocation of its FY 2011 grant funds; declare that HUD's rejection of its FY 2011 Action Plan and fair housing certification violated the APA and § 12711; and order HUD to approve the County's FY 2011 grant submission.[4]

HUD moved to dismiss. The district court granted HUD's motion, ruling that it lacked jurisdiction over the County's APA claims.[5] The court concluded that HUD's rejection of the County's fair housing certification was an act "committed to agency

---

[3] The County also stated claims under the Fifth Amendment, which it voluntarily dismissed in June 2013.

[4] In prior proceedings before this court, a panel of this court denied the County's motion for a preliminary injunction barring HUD from reallocating the County's FY 2011 grant allocation. The panel also dismissed as moot Count IV of the County's complaint, which alleged that HUD's conditioning of AI approval on the County's passage of source-of-income legislation violated 42 U.S.C. § 12711. *County of Westchester v. U.S. Dep't of Housing and Urban Dev.*, 531 Fed. App'x 178, 178-79 (2d Cir. 2013).

[5] The district court recognized that this court has recently expressed uncertainty as to whether, "in light of recent Supreme Court precedent[,] . . . these threshold limitations are truly jurisdictional or are rather essential elements of the APA claims for relief." *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008). The district court properly concluded that this distinction did not affect its disposition of HUD's motion, which sought dismissal of the County's complaint pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

discretion by law" and therefore not subject to judicial review. *See* 5 U.S.C. § 701(a)(2).

The County appealed.

**DISCUSSION[6]**

**I.      Mootness**

As a preliminary matter, HUD argues that this appeal is moot with respect to the FY 2011 funds that HUD has already reallocated to other jurisdictions. An action not moot at its inception can become moot on appeal if "an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (internal quotation marks omitted).

This court addressed a similar claim of mootness in *County of Suffolk v. Sebelius*. In *County of Suffolk*, the plaintiff counties filed suit against the Department of Health and Human Services ("HHS") under the APA, arguing that HHS had improperly withheld certain grant funds from the plaintiffs in fiscal years 2007 and 2008. *Id.* at 138-39. While the suit was pending, HHS moved to dismiss the action as moot, on the grounds that HHS had already distributed all funds appropriated by Congress for fiscal years 2007 and 2008 to other eligible grantees. *Id.* at 139. This court agreed that the case was moot. *Id.* at 144. The court noted that the APA's limited waiver of the federal government's sovereign immunity permits only suits seeking relief "other than money damages." *Id.* at 140 (citing

---

[6] We review the district court's dismissal under Rule 12(b)(1) *de novo*. *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008).

5 U.S.C. § 702). Thus, while the counties could sue under the APA for an order directing HHS to give them funds appropriated by Congress for the relevant grant programs in fiscal years 2007-2008, the court could not order that the contested amounts be paid to the counties from another source of funds, because that would amount to an award of compensatory damages. *Id.* at 140-41. Because HHS had exhausted all of the FY 2007-2008 appropriations for the relevant grant program, no relief was available, and the counties' claims were moot. *Id.* at 142.

Of the approximately $7.4 million initially allocated to the County for FY 2011, all but $752,844 of the funds have been reallocated. The non-reallocated funds are all part of the County's allocation under the HOME program. With respect to the reallocated funds, the County concedes that there are no funds available from which this court can provide relief.[7] We thus affirm the dismissal of the County's claims insofar as they seek relief with respect to already reallocated funds.[8]

---

[7] We rely on the County's concession on this point and do not address the issue further.

[8] This appeal is not moot with respect to the funds that were not reallocated. After the appropriation for those funds expired, the funds remained in an "expired account," where they will "retain their fiscal year identity . . . for that appropriation for an additional five fiscal years." 1 Gov't Accountability Office, *Principles of Federal Appropriations Law* (*GAO Redbook*) 5-67, 5-72 (3d ed. 2004). During the five-year period, the funds cannot be used to incur new obligations, but they may be used to pay obligations that are "properly chargeable to the account prior to its expiration." *Id.*; *see* 31 U.S.C. §§ 1552(a), 1553(a). Accordingly, although the statutory authority for the FY 2011 grant funds expired on September 30, 2013, the funds remain available to satisfy obligations chargeable to HUD before that date.

**II.    Preclusion**

HUD contends that collateral estoppel bars the County from prevailing in its contention that HUD's rejection of the County's submissions is subject to judicial review. We disagree.

"Under federal law, a party is collaterally estopped from relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks omitted).

HUD's collateral estoppel argument is based on court proceedings subsequent to the monitor's Report and Recommendation in November 2011 addressing the scope of the County's obligations to analyze exclusionary zoning practices under the consent decree. When the parties submitted their dispute to the monitor, the County asked the monitor to address whether HUD's rejection of the County's AI was proper. The monitor declined to do so, on the grounds that the question was "not properly joined for resolution." JA 225. The monitor underscored that "neither the question of whether the County's July 2011 AI submission was improperly rejected by HUD nor the question of the adequacy of the County's certification that it [wa]s affirmatively furthering fair housing [were] before the Monitor." JA 225-226.

The County sought review of this determination before a magistrate judge, as provided for in the consent decree. The magistrate judge upheld the monitor's position:

> [The County] does not explain why the question of the adequacy of its AI was a matter to be adjudicated by the Monitor. The County has not argued that the Settlement vests in the Monitor any authority to require HUD to accept an AI or to adjudicate disputes as to the adequacy of the AI. Indeed, the Settlement vests authority for such approval of the AI exclusively in HUD. . . . (AI must "be deemed acceptable by HUD"). Accordingly, the County has not proffered any basis for this Court to find that the Monitor erred in refusing to consider the sufficiency of the County's AI submissions, and its objection to the Report on this ground is therefore overruled.

*U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, No. 06 Civ. 2860(DLC)(GWG), 2012 WL 917367, at *10 (S.D.N.Y. Mar. 16, 2012). The district court adopted the magistrate judge's recommendation on this issue. *Westchester 2012 Dist. Ct.*, 2012 WL 1574819, at *11.

Seizing on the magistrate judge's statement that "the Settlement vests authority for such approval of the AI exclusively in HUD," JA at 98, HUD argues that the magistrate judge ruled that HUD's rejection of the County's AI was not judicially reviewable, and thus the County is estopped from relitigating the issue. HUD's reading takes the magistrate judge's statement out of context and misinterprets it. The issue before the magistrate judge was whether, given the authority granted to the monitor under the Settlement, it was error for the *monitor* to refuse to review HUD's rejection of the County's AI and its fair housing certification. The magistrate judge concluded that there was no evidence the monitor had been granted power to do so by the consent decree. This

is not an "identical question" to the issue raised in this appeal: whether HUD's rejection of the County's fair housing certification and consequent disapproval of the County's FY 2011 Action Plan is excluded from judicial review under the APA. Collateral estoppel does not apply.

### III. Availability of Judicial Review

The County argues that the district court erred in concluding that the County's APA claims challenging HUD's rejection of its FY 2011 fair housing certification and Action Plan were not subject to judicial review. We conclude that the statutes governing HUD's administration of the relevant grants provide meaningful standards constraining HUD's exercise of discretion and that HUD's actions are thus subject to judicial review.

Under the APA, a party aggrieved by agency action is generally "entitled to judicial review thereof." 5 U.S.C. § 702; *see Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (noting the "strong presumption that Congress intends judicial review of administrative action"). However, review is not available "to the extent that . . . agency action is committed to agency discretion by law." *Id.* § 701(a)(2). This exception to the availability of judicial review "applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008) (internal quotation marks omitted).

To determine the extent of HUD's discretion and whether there is "law to apply" in this case, we look to the statutory provisions that govern HUD's administration of the relevant grant funds. As discussed *supra*, the parties agree that the only funds still at issue

in this case are those that were not reallocated. The non-reallocated funds are all funds that were allocated to the County under the HOME program.

To participate in the HOME program, a jurisdiction must "submit to [HUD] a comprehensive housing affordability strategy in accordance with [42 U.S.C. § 12705]." 42 U.S.C. § 12746(5). The housing strategy must "include a certification that the jurisdiction will affirmatively further fair housing." 42 U.S.C. § 12705(b)(15). Participating jurisdictions must also submit "annual updates of the housing strategy," and the statutory scheme appears to treat these annual updates as extensions of the initial housing strategy, subject to ongoing approval or disapproval by the Secretary of HUD. 42 U.S.C. § 12705(a)(2), (3). Under current HUD regulations, the annual fair housing certification submitted by the County is a component of the statutorily required housing strategy. *See* 24 C.F.R. §§ 91.200, 91.225.

Section 12705(c) governs HUD's approval or rejection of housing strategies. It provides:

> Not later than 60 days after receipt by the Secretary, the housing strategy shall be approved unless the Secretary determines before that date that (A) the housing strategy is inconsistent with the purposes of this Act, or (B) the information described in subsection (b) of this section has not been provided in a substantially complete manner. For the purpose of the preceding sentence, the adoption or continuation of a public policy identified pursuant to subsection (b)(4) of this section shall not be a basis for the Secretary's disapproval of a housing strategy.

42 U.S.C. § 12705(c)(1). This provision cross-references subsection (b)(4), which requires the jurisdiction to

13

explain whether the cost of housing or the incentives to develop, maintain, or improve affordable housing in the jurisdiction are affected by public policies, particularly by policies of the jurisdiction, including tax policies affecting land and other property, land use controls, zoning ordinances, building codes, fees and charges, growth limits, and policies that affect the return on residential investment . . . .

42 U.S.C. § 12705(b)(4).[9]

Section 12708, which appears in the same subchapter of the U.S. Code, governs a participating jurisdiction's ongoing "Compliance" with its housing strategy, and requires the jurisdiction to file an annual review and report, including "an evaluation of the jurisdiction's progress in meeting its goal" of affirmatively furthering fair housing pursuant to 42 U.S.C. § 12705(b)(15). *See* 42 U.S.C. § 12708(a)(1). This section provides that "[r]eview of a housing strategy by any Federal, State, or other court shall be limited to determining whether the process of development and content of the strategy are in substantial compliance with the requirements of this Act." 42 U.S.C. § 12708(c). It also explicitly precludes review of the "adequacy of information submitted under section 12705(b)(4) of this title," but not other sections. *Id.*

---

[9] The legislative history supports the interpretation that there are limits on HUD's authority, as the Senate Report observed: "[T]he Committee bill does not permit HUD (1) to disapprove of a housing strategy because of HUD's disagreement with any policies identified under section 105(b)(4) or (2) to require a change in any such policy as a prerequisite to allocation of assistance under this or another Act." S. Rep. No. 101-316, at 40 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5806.

Finally, § 12711, which also appears in the same subchapter of the U.S. Code, sets further limitations on HUD's ability to approve or reject a jurisdiction's application for grant funding. It provides:

> Notwithstanding any other provision of this subchapter or subchapter II of this chapter, the Secretary shall not establish any criteria for allocating or denying funds made available under programs administered by the Secretary based on the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law that is (1) adopted, continued, or discontinued in accordance with the jurisdiction's duly established authority, and (2) not in violation of any Federal law.

42 U.S.C. § 12711.

By reason of these provisions, this is not a case in which the statute is "drawn in such broad terms that . . . there is no law to apply." *Sharkey*, 541 F.3d at 91 (internal quotation marks omitted). Indeed, § 12708(c) specifically provides for judicial review to determine "whether the process of development and content of the strategy are in substantial compliance with the requirements of this Act," and explicitly precludes review only of the "adequacy of information submitted under section 12705(b)(4)." In addition, HUD's actions are reviewable to determine whether or not the basis of HUD's disapproval of the County's grant submission violated the judicially cognizable limitations provided by §§ 12711 and 12705. Section 12711 prohibits HUD from "establish[ing] . . . criteria for allocating or denying funds" based on the County's "adoption, continuation, or discontinuation . . . of any public policy . . . not in violation of any Federal law." Section 12705(c) permits HUD to disapprove a housing strategy if

15

HUD "determines . . . that . . . the housing strategy is inconsistent with the purposes of [the Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101-625, 104 Stat. 4079 (1990)]" or that the statutorily required contents of the housing strategy, which includes the fair housing certification, "ha[ve] not been provided in a substantially complete manner." However, in determining whether to disapprove a housing strategy on one of these two grounds, HUD may not reject the strategy on the basis of a jurisdiction's "adoption or continuation of a public policy identified pursuant to subsection (b)(4)," which includes, *inter alia,* "public policies, [such as] tax policies . . . , land use controls [and] zoning ordinances . . . ." that may affect the development of affordable housing in the jurisdiction. 42 U.S.C. § 12705(b)(4).[10]

---

[10] In this case, HUD rejected the County's Action Plan as "substantially incomplete" based on HUD's determination that the County's fair housing certification was inaccurate. *See* 24 C.F.R. § 91.500 (providing that HUD will deem "substantially incomplete . . . [a] plan for which a certification is rejected by HUD as inaccurate"). HUD argues that § 12704, which defines "certification," contains no meaningful standard for judging HUD's assessment of when a certification is inaccurate.

The statute defines "certification" as "a written assertion, based on supporting evidence, . . . which assertion shall be deemed to be accurate for purposes of this Act, unless the Secretary determines otherwise after inspecting the evidence and providing due notice and opportunity for comment." 42 U.S.C. § 12704(21). However, even if § 12704 does not independently provide meaningful standards for judging when a certification may be deemed inaccurate, §§ 12705 and 12711 do provide meaningful standards for determining whether HUD's rejection of the County's fair housing certification and subsequent denial of funds were based on reasons not permitted by statute.

There is some discussion in the briefs as to whether the County's reviewability argument with respect to § 12711 is available, given this Court's prior dismissal of its independent § 12711 claim as moot. 531 Fed. App'x 178, 178 (2d Cir. 2013). The only issue before us, however, is whether the district court was correct to dismiss the County's APA claims on the ground that the challenged denial of funding was committed to agency discretion by law. In this context, the existence of § 12711, which imposes a judicially

HUD argues that, because the County's fair housing certification must be made to HUD's "satisfaction," this indicates that the matter is committed to HUD's discretion by law. HUD refers to one statutory and one regulatory provision in which this "satisfaction" language occurs. The statutory provision is 42 U.S.C. § 5304(b), which provides:

> Any grant under section 5306 of this title shall be made only if the grantee certifies *to the satisfaction of the Secretary* that– . . .
> (2) the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 [42 U.S.C.A. § 2000a et seq.] and the Fair Housing Act [42 U.S.C.A. § 3601 et seq.], and the grantee will affirmatively further fair housing . . . .

42 U.S.C. § 5304(b) (emphasis added). It appears, however, that this provision does not apply to the HOME program, because HOME funds are not allocated pursuant to 42 U.S.C. § 5306. As discussed above, only HOME funds remain at issue in this case.[11] That being said, 42 U.S.C. § 12708, which does govern the allocation of HOME funds, contains similar "satisfaction" language. Specifically, § 12708(a)(3) provides that "[i]f a jurisdiction fails to submit a report *satisfactory to the Secretary* in a timely manner, assistance to the jurisdiction . . . may be . . . suspended until a report *satisfactory to the Secretary* is submitted; . . . or withdrawn and reallocated if the Secretary finds, after notice

cognizable constraint on agency denials of HOME funding, suggests that such denials are not committed to agency discretion by law. This fact about the statutory scheme remains the case regardless of the mootness of the County's independent §12711 claim. On remand, the district court should consider whether the agency's denial of funding was within its statutory authority, taking into account § 12711 and the other statutory provisions discussed above.

[11] All of the CDBG funds initially allocated to the County for FY 2011 were reallocated to other jurisdictions and are no longer at issue in this case.

and opportunity for a hearing, that the jurisdiction will not submit a *satisfactory* report" (emphasis added).

Nonetheless, such "satisfaction" language, while conferring broad agency discretion as to certain questions, does not negate the several statutory provisions discussed above that establish limitations on the reasons for which HUD may disapprove of housing strategies and deny funding, and provide  for judicial review of housing strategies.

HUD also argues that "satisfaction" language in its own regulations shields its denial of funding from judicial review. Under the current regulatory scheme, jurisdictions must submit  a number of annual certifications, including "a certification that [the jurisdiction] will affirmatively further fair housing," in order to obtain funding under the HOME program. 24 C.F.R. § 91.225; *see id.* §§ 91.2, 91.200. The regulations state that these certifications must be "satisfactory to HUD." *Id.* at 91.225.

We reject the proposition that HUD's approval or rejection of the County's fair housing certification is unreviewable because of this provision in HUD's regulations. Although the regulations state that the certification must be "satisfactory to HUD," the statutory provisions described above contain meaningful standards constraining HUD's discretion and providing for judicial review. The agency's adoption of regulations that might appear to give the agency unfettered discretion does not act to nullify the meaningful standards which exist in the governing statute.

Finally, HUD points to the consent decree's requirement that the County submit an analysis of impediments that "must be deemed acceptable by HUD." According to HUD, this language demonstrates that HUD's rejection of the County's AI–which, in turn, was the basis of HUD's rejection of the County's fair housing certification–has been left to HUD's discretion. In our view, this provision in the consent decree does not affect whether the County's APA claims are judicially reviewable, though it may affect the merits of the County's claims. We express no view on the question and leave it to the district court to address in the first instance on remand.

## CONCLUSION

We AFFIRM the dismissal of the County's claims to the extent the County seeks relief with respect to the FY 2011 grant funds that have already been reallocated. As to the remaining funds, we VACATE the district court's judgment, which dismissed the County's claims as not subject to judicial review under the APA.[12] The matter is REMANDED.

---

[12] The district court also dismissed Count IV of the County's complaint for failure to state a claim. Count IV alleged that HUD violated § 12711 by conditioning the County's receipt of grant funds on the passage of source-of-income legislation. As noted above, a panel of this court has since dismissed Count IV of the County's complaint as moot. *See County of Westchester v. U.S. Dep't of Housing and Urban Dev.*, 531 Fed. App'x 178, 178 (2d Cir. 2013).