Joseph CHACON, Jr., et al.,
Plaintiffs-Appellants,

v.

Sam GRANATA et al., and Randolph
Air Force Base,
Defendants-Appellees.

No. 74–3295.

United States Court of Appeals,
Fifth Circuit.

July 10, 1975.

Rehearing Denied July 28, 1975.

William S. Sessions, U. S. Atty., Edward M. Johnson, Asst. U. S. Atty., San Antonio, Tex., for Randolph Air Force Base.

Wallace H. Johnson, Asst. Atty. Gen., Jacques B. Gelin, Lawrence E. Shearer, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before CLARK, Associate Justice,[*] and GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In this case involving the annexation of outlying private lands by the City of San Antonio, Texas, we must determine whether the District Court erred in denying all relief and dismissing plaintiffs' complaint, which alleged that the annexation is the first step in an unconstitutional plan by the City and nearby Randolph Air Force Base to take plaintiffs' land without just compensation.

I. Factual Background

Plaintiffs are twenty owners of land near the City of San Antonio, Texas. They filed their complaint in this action on June 13, 1974, against the City of San Antonio, its City Manager, and Randolph Air Force Base—minutes after the passage of an ordinance by the San Antonio City Council annexing a large tract of land, including their parcels, near Randolph Air Force Base. The complaint alleged that the annexation was the first step in a scheme undertaken by the City and the Air Force Base to deprive them of property without just compensation, either by unlawful zoning ordinances or eminent domain proceedings initiated after the annexation has driven down the property values. According to the City Manager of San Antonio, the purpose of the anticipated zoning or condemnation is to prevent uses of the subject land that would interfere with aircraft operations at the Air Force Base.

Earle Cobb, Jr., San Antonio, Tex., for plaintiffs-appellants.

Edgar Pfeil, San Antonio, Tex., for Sam Granata, and others.

* Of the Supreme Court of the United States (Retired), sitting by designation.

Representatives of Randolph Air Force Base admit that the possibility of residential development of this land (now devoted to farming) is a source of official concern, because of the danger of airplane crashes.

■ The complaint sought, among other things, a temporary restraining order against the annexation, a permanent injunction against any further exercise of jurisdiction over the subject lands by the City, a declaration that the annexation ordinance and proposed zoning ordinances (creating an "airport overlay" district in which land use would be restricted in order to assure safe approaches to the runways of Randolph Air Force Base) are unconstitutional, a declaration that the section of the city charter pursuant to which the annexation ordinance was passed is unconstitutional, and reasonable damages. After a hearing at which the testimony of three witnesses[1] was taken and the parties argued the applicable law, the District Court made findings of fact and conclusions of law. The Court held that the annexation, considered by itself, is lawful under prior decisions of this Court, and that plaintiffs' challenge to anticipated[2] zoning or condemnation proceedings by the City is premature. On this basis the Court concluded that no ripe controversy was presented for decision and dismissed the complaint with preju-

dice for lack of jurisdiction. Plaintiffs appeal from this adverse judgment.

## II. Validity of the Annexation and Prematurity of Plaintiffs' Other Claims

■ Although plaintiffs' complaint alleges that the annexation ordinance was enacted in violation of their right to vote, it cannot be doubted that the annexation was procedurally proper. This Court has twice upheld annexations factually indistinguishable from this one. Incorporation Committee of the City of Hills & Dales v. Henckel, 5 Cir., 1972, 461 F.2d 847 (aff'd without opinion under Local Rule 21); Hammonds v. City of Corpus Christi, Texas, 5 Cir., 1965, 343 F.2d 162.

■ Plaintiffs contend, however, that in this case the annexation is different because it was undertaken as the first step in a scheme to deprive them of just compensation for property taken for public purposes by passing illegal zoning laws or abusing the power of eminent domain. At some point, plaintiffs may be able to show that the annexation was the first step toward a denial of their constitutional right to just compensation. Whatever wrong the annexation might inflict, however, would be merged into the ultimate acts (such as the passage of unconstitutional zoning ordinances) constituting a deprivation of plaintiffs' rights, should such a deprivation ever occur.[3] Taking all of plaintiffs' conten-

---

1. Colonel John F. Rollston, an official at Randolph Air Force Base, testified concerning the dangers of permitting residential development near the airfield, and stated that he had expressed his opinion on this subject to City officials. Mr. Sam Granata, City Manager of San Antonio, testified concerning the purposes the City Council hoped to serve by annexing the subject land. One of the plaintiff property owners, a Mr. Boenig, gave testimony concerning the adverse effects he foresaw from zoning his land.

2. The Court also held that Randolph Air Force Base, as an agency of the United States Government, was immune from suit and should be dismissed from the case. We agree. *See* Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Fort Worth Nat. Corp. v. Federal Savings & Loan Ins. Corp., 5 Cir., 1972, 469 F.2d 47, 54.

3. At oral argument counsel for plaintiffs stated that, since the District Court's dismissal of the complaint, the City has already begun to impose minimal restrictions on use of the subject land. On the other hand, counsel for the City stated that no zoning ordinances had been passed. It is also unclear whether the City would have been able to exercise its eminent domain powers without first annexing the subject land. *See* Vernon's Tex.Civ.Stat.Ann. Arts. 969b, 1107, 1109b. If so, plaintiffs might some day be able to show that the annexation was a wholly unnecessary step designed to depress property values and thus decrease the cost of an eventual condemnation. *See* Foster v. Herley, 6 Cir., 1964, 330 F.2d 87. If not, such a showing would be virtually impossible. These ambiguities demonstrate the uncertainty of the legal injuries plaintiffs state in this case.

tions as true, the annexation by itself is nothing more than an inchoate wrong that may never ripen.[4] *See* United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

That the annexation itself inflicts no legal injury on these plaintiffs is clear, though it allegedly has caused a decline in the value of their property. Many kinds of legislative and administrative action affect property values, but, without some diminution in the owner's rights of use, do not constitute a taking within the purview of the Fourteenth Amendment. *See, e. g.,* Sayre v. City of Cleveland, 6 Cir., 1974, 493 F.2d 64 (approval of urban renewal plan allegedly causing decline in value of plaintiff's property held not to constitute a taking of the property); Woodland Market Realty Company v. City of Cleveland, 6 Cir., 1970, 426 F.2d 955 (decline in property values caused by appropriation of adjacent land for urban renewal project held not a taking); 23 Tracts of Land, etc. v. United States, 6 Cir., 1949, 177 F.2d 967, 969–970.

Some forms of relief need not await the occurrence of a completed legal injury. The very purpose of injunctive remedies, which the plaintiffs sought in the District Court, is to prevent the occurrence of certain kinds of injuries in the first instance. We believe, however, that the District Court's dismissal, denying both temporary and permanent injunctive relief, was not erroneous, because plaintiffs failed to establish the fundamental prerequisites for the issuance of an injunction.

An injunction is appropriate only if the anticipated injury is imminent and irreparable. *See* O. Fiss, Injunctions 3, 9 et seq. (1972). Insofar as it is premised on the eventual passage of unconstitutional zoning ordinances, plain-

tiffs' complaint faces an impossible burden of showing that any harm to them is imminent. At the time of the District Court's order dismissing this action, the City of San Antonio had passed no zoning ordinances applying to plaintiffs' land. In reviewing enacted legislation, the courts presume, as a matter of construction, that the legislative body has acted with due regard for the constitutional rights of affected parties. *See generally,* Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L. Rev. 527, 539 (1947). Where the legislative body has not yet acted, we must presume that when it does act it will respect rights guaranteed by the Constitution. The contours of the ordinances anticipated by plaintiffs cannot be predicted. Nor can it be foreseen how these laws will be interpreted judicially or applied administratively. Under these circumstances the injury plaintiffs fear about future zoning ordinances is not imminent.

Any injury plaintiffs might suffer from abuse of the City's eminent domain power can be remedied when the City formally exercises that power. If the annexation serves no purpose other than to depress the value of the land, and if such loss of value is a legally cognizable injury, plaintiffs can seek compensation for the value of the land as determined at the time of the annexation. *See* City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E.2d 52 (1963); City of Buffalo v. J. W. Clement Company, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971). If the annexation has injured plaintiffs by depressing the value of their land, the injury is not irreparable, and thus cannot be the predicate for an injunction.

It may develop that the City of San Antonio, in promulgating restrictions on the use of plaintiffs' land or otherwise assuring adequate approach

---

**4.** It would also be premature to consider the question whether plaintiffs must exhaust any state administrative remedies before asking a federal court to strike down whatever zoning

ordinances may come to govern the use of their land. *See* Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974).

clearances for aircraft using the runways at the Air Force Base, will cause a taking of the land, either through improper zoning or abuse of its eminent domain powers. At present, however, we discern no more than an allegedly ill-intentioned legislative action causing no cognizable injury.[5]

Affirmed.

5. "There is a wise and ancient doctrine that a court will not inquire into the motives of a legislative body or assume them to be wrongful." United States v. Constantine, 296 U.S. 287, 299, 56 S.Ct. 223, 228, 80 L.Ed. 233 (1935) (Cardozo, J., dissenting.) We agree with the District Court's conclusion that if the annexation is lawful in its effect, as it plainly is, the motives of those who legislated it are beyond judicial scrutiny.