06-5301-cv
Diaz v. United States

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Submitted: December 13, 2007    Decided: February 26, 2008)

Docket No. 06-5301-cv

- - - - - - - - - - - - - - - - - - - -X

FERNANDO HERNANDEZ DIAZ,

                Plaintiff-Appellant,

        - v.-

UNITED STATES OF AMERICA, DEPARTMENT OF
HOMELAND SECURITY, BUREAU OF
IMMIGRATION & CUSTOMS ENFORCEMENT, DRUG
ENFORCEMENT AGENCY,

                Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -X


        Before:  JACOBS, Chief Judge, POOLER and SACK, Circuit
                 Judges.

        Plaintiff appeals from the judgment of the United States District Court for the Eastern District of New York (Ross, J.), which dismissed his claim for the return of cash that was seized and forfeited in connection with plaintiff's arrest for violating currency reporting laws.  The district court rejected plaintiff's due process challenge, finding that plaintiff received adequate notice of the proceedings.  We affirm on a different ground:  the district court lacked subject matter jurisdiction because the claim is barred by sovereign immunity.

FERNANDO HERNANDEZ-DIAZ, pro se, Coleman, Florida.

KEISHA-ANN G. GRAY, Assistant United States Attorney (Steven Kim, Kathleen A. Nandan, Assistant United States Attorneys, of counsel), for Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Defendants-Appellees.

DENNIS JACOBS, Chief Judge:

Fernando Hernandez Diaz seeks the return of $91,743 in cash that was seized from him when he was arrested for failing to declare he was transporting more than $10,000 in United States currency out of the country (in violation of 31 U.S.C. §§ 5316(a) and 5322). Diaz appeals from a judgment of the United States District Court for the Eastern District of New York (Ross, J.), dismissing his claim on the ground that the notice of forfeiture satisfied due process. We affirm on a different ground: subject matter jurisdiction is lacking because sovereign immunity bars a federal court from ordering the United States to return funds that have already been disbursed. See ACEquip Ltd. v. American Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003) ("Our court may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court.").

2

**BACKGROUND**

On October 25, 1999, while Diaz was boarding a flight to his native Colombia, United States Customs agents arrested him and seized $91,743 in cash from his person and luggage. Diaz was charged with attempting to transport $10,000 or more in currency outside the United States without reporting the funds. See 31 U.S.C. §§ 5316(a) and 5322. Diaz pled guilty and, on January 24, 2000, was sentenced to the three months he had already served and a fine of $5,000 to be taken from the funds seized. Diaz was removed from the United States soon thereafter. He later returned to the United States and is presently incarcerated for a federal drug offense.

In November 1999, Customs sent written notice that the money was seized, that it was subject to forfeiture, and that Diaz had 30 days to petition for relief. The notice was sent to Diaz's prison address and to his last known residence in Bogota, Colombia. On December 17, 1999, Diaz, through his criminal defense attorney Salvador Cheda, submitted an affidavit documenting the supposedly legitimate source of the cash.

On March 30, 2000, Customs sent Cheda its decision denying the petition because Diaz "failed to show sufficient proof of legitimate source of the seized funds." The

decision advised Cheda that Diaz had another 30 days to respond by submitting further documentation or else the government would commence administrative forfeiture proceedings. When Diaz missed this deadline, Customs sent Cheda a notice of Final Administrative Action that the cash would be forfeited on June 25, 2000 if by then no claim was filed. Customs also published notice of the seizure in the New York Post (which erroneously gave the date of the seizure as May 15, 1998 rather than October 25, 1999). Neither Diaz nor Cheda responded to these notices. On June 26, 2000, Customs administratively forfeited the seized currency. On July 27, 2000, pursuant to an asset sharing agreement, Customs transferred half the currency to the Queens County District Attorney's Office and half to the U.S. Treasury Forfeiture Fund.

More than five years later, in December 2005, Diaz pro se filed this claim, arguing that the notice of the original forfeiture proceeding violated his Fifth Amendment right to due process, and seeking another chance to prove the funds' legitimate source. Diaz styled his claim as a motion under Fed. R. Crim. P. 41(g) for the return of property seized in a criminal proceeding, and the district court treated it as such.

On defendants' motion for summary judgment, the

4

district court observed that it is "an open question in this Circuit whether the rule that sovereign immunity bars relief under Rule 41(g) where seized property is no longer available applies to the seizure and subsequent unavailability of fungible currency." Notwithstanding the district court's "serious doubt as to its jurisdiction to entertain the claim," it "assume[d] arguendo that sovereign immunity poses no bar" and proceeded to the merits of the notice argument. Seeing no issue of material fact as to whether the government provided Diaz with adequate notice, the district court dismissed the claim.

**DISCUSSION**

**A**

Rule 41(g) permits "[a] person aggrieved . . . by the deprivation of property [to] move for the property's return." Fed. R. Crim. P. 41(g). A Rule 41(g) motion that is brought after the criminal proceeding is over is treated as a civil equitable action. See Adeleke v. United States, 355 F.3d 144, 149 (2d Cir. 2004); United States v. Giovanelli, 998 F.2d 116, 118-119 (2d Cir. 1993). That is what this is.

Commencement of a civil or administrative forfeiture proceeding ordinarily deprives the district court of subject

5

matter jurisdiction to review the merits of the forfeiture on a Rule 41(g) motion. See De Almeida v. United States, 459 F.3d 377, 382 (2d Cir. 2006); United States v. One 1987 Jeep Wrangler Auto. VIN # 2BCCL8132HBS12835, 972 F.2d 472, 479 (2d. Cir 1992). However, once the forfeiture proceeding is completed, and the claimant no longer has the opportunity to raise objections to the seizure in that forum, civil equitable jurisdiction may be invoked to determine whether proper procedural safeguards were observed. See id. at 480; Polanco v. U.S. Drug Enforcement Agency, 158 F.3d 647, 651 (2d Cir. 1998) (finding subject matter jurisdiction in 28 U.S.C. § 1331, the general federal question statute, over claim of procedurally deficient forfeiture); United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000) (en banc) ("[A] district court has jurisdiction to consider a claim that a person received inadequate notice of completed administrative forfeiture proceedings, notwithstanding that the claim was styled as a Rule 41[(g)] motion and filed after criminal proceedings had been completed.").

The threshold problem with this claim is that the currency taken from Diaz was forfeited and has been disbursed, so that all he can seek now is to be paid the cash equivalent of the seized currency--that is, money from

6

the fisc. That claim is frustrated by the principle of sovereign immunity which, absent a waiver, shields the federal government and its agencies from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994); see United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Waivers of sovereign immunity must be "unequivocally expressed"; the government's consent to be sued is strictly construed and cannot arise by implication. United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).

Rule 41(g) itself, "which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." Adeleke 355 F.3d at 151 (citing sister circuits that have reached the same conclusion); Bertin v. United States, 478 F.3d 489, 492 (2d Cir. 2007) (citing Adeleke for same). As to civil equitable actions brought for the return of property after the conclusion of criminal proceedings, "such equitable jurisdiction does not permit courts to order the United States to pay money damages when, for whatever reason,

7

property is not available for Rule 41(g) return." Adeleke, 355 F.3d at 151. A district court "can order the return of property that is in the hands of the government." Bertin, 478 F.3d at 492 (footnote omitted).

This Circuit has not decided whether a court, under Rule 41(g), can order repayment of money seized--which is notionally fungible--once the bills and coins that were seized have been deposited into a government account.[1]

Adeleke held that sovereign immunity barred monetary damages for personal property destroyed while in the government's possession. Although the Adeleke claimant originally sought return of $1,000 in cash, this aspect of the claim was rendered moot when the government voluntarily paid it back. Adeleke, 355 F.3d at 148. Similarly, in

---

[1] A non-precedential order in a Rule 41(g) context touched on the question. See Elfand v. United States, 161 F. App'x 150 (2d Cir. 2006) (unpublished). Elfand sought return of (inter alia) a car and $28,000 cash seized by the DEA in San Diego. The claim for the car, which had been sold, was dismissed on the ground that sovereign immunity bars recovery of money damages in lieu of the return of property. Id. at 151. Avoiding any characterization of the claim for cash as one for damages, the order observed that Elfand was asking for the specific remedy of "'the very thing to which he was entitled,'" id. at 152 (quoting Bowen v. Massachusetts, 487 U.S. 879, 895 (1988) (other internal quotation marks omitted)), a remedy which might not be defeated by sovereign immunity. But the issue was left open (hence the summary disposition), because the Court transferred venue over Elfand's claim to the Southern District of California.

*Bertin*, the claimant sought the return only of personal property; because the government had already returned the cash seized upon his arrest, the Court did not need to "consider whether a court, under Rule 41(g), can order the return of fungible cash." *Bertin*, 478 F.3d at 492 n.2.

As our opinion in *Adeleke* pointed out, a useful analog can be found in *Nordic Village*, in which a debtor in bankruptcy sought to have the Internal Revenue Service return an unauthorized tax payment, analogizing its claim to a demand that the government return tangible property seized from a debtor before it filed for bankruptcy protection. *See Adeleke*, 355 F.3d at 150 (citing *Nordic Village*, 503 U.S. at 39). The Supreme Court held that the bankruptcy court's *in rem* jurisdiction did not imply a waiver of sovereign immunity permitting monetary recovery: "A suit for payment of funds from the Treasury is quite different from a suit for the return of tangible property . . . ." *Nordic Village*, 503 U.S. at 39. Quoting that observation, *Adeleke* concluded that "[t]he Sovereign's consent to be sued for the latter form of relief does not imply its consent to be sued for the former." *Adeleke*, 355 F.3d at 150.

We read this precedent to say that seized currency should be treated like any other seized property: if the

9

property is no longer available, sovereign immunity bars the claimant from seeking compensation. Fungibility does not furnish a counter-argument; rather it confirms that money seized from Diaz, now that it is disbursed, can no longer be identified or located in the coffers of the government. True, the fungibility of money argues the ease and precision with which compensation can be achieved; but that says nothing about whether sovereign immunity has been waived to allow payment from the Treasury to compensate for any wrongful seizure of this one form of property. We therefore join in the conclusion of the three sister circuits that have issued precedential decisions on the question. See Bailey v. United States, 508 F.3d 736, 740 (5th Cir. 2007) (instructing district court that if the government no longer possesses the seized cash, "[claimant's] motion must be denied because the government cannot return property it does not possess, and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g)."); Clymore v. United States, 415 F.3d 1113, 1120 (10th Cir. 2005) (remanding for determination of whether the government still possessed claimant's personal property and cash, and holding as to either item that "sovereign immunity bars monetary relief in a Rule 41[(g)] proceeding when the government no

longer possesses the property."); Okoro v. Callaghan, 324 F.3d 488, 491 (7th Cir. 2003) (affirming on other grounds, but stating that "[a] suit for restitution is subject to the defense of sovereign immunity when relief would require disbursement of money from the treasury, even if the government is merely an escrow agent holding funds owned by the plaintiff." (citations omitted)); but see Perez-Colon v. Camacho, 206 F. App'x 1, 4 (1st Cir. 2006) (per curiam) (non-precedential) (describing claim as one for return of the very currency seized and "not damages in substitution for a loss," and ruling that recovery was not barred despite "the fact that the government obviously cannot restore to [appellant] the specific currency that was seized" (internal quotation marks and citation omitted)).

Once seized currency has been disbursed and is no longer available, a claim for its return is analogous to any Rule 41(g) claim for the return of tangible property that is no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity. Here, the seized currency has been disbursed to the United States Treasury and the Queens County District Attorney's Office; it is therefore unavailable for return. In the absence of an express waiver of sovereign immunity, we lack jurisdiction to order the United States to pay the monetary equivalent.

11

**B**

Although Diaz styled his claim as a Rule 41(g) motion, we liberally construe his pro se submissions to "to raise the strongest arguments that they suggest," Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), and therefore consider whether they state a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA waives sovereign immunity, inter alia, for "claims against the United States, for money damages . . . for . . . loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Id. § 1346(b)(1); see Adeleke, 355 F.3d at 153. This waiver, however, is made subject to the detention exception, § 2680(c) of the FTCA, which bars claims "arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c); see Bertin, 478 F.3d at 492.

The Civil Asset Forfeiture Reform Act of 2000, Publ L. No. 106-185, 114 Stat. 202 ("CAFRA"), amended § 2680(c) to create an exception to the exception, that is, to permit claims against the United States for injury or loss of goods or property in law enforcement custody if the claimant can

12

satisfy four conditions:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

§ 2680(c)(1)-(4); see Ali v. Fed. Bureau of Prisons, 128 S. Ct. 831, 837 (2008). This "re-waiver" of sovereign immunity for a narrow category of forfeiture-related damages claims was a safeguard created by CAFRA in response to the overly enthusiastic pursuit of civil and criminal forfeiture. See United States v. Khan, 497 F.3d 204, 208 (2d Cir. 2007).

We need not consider each of § 2680(c)'s requirements in detail as it is immediately clear that Diaz cannot satisfy the last one because he was convicted of the crime for which his property was subject to forfeiture. 28 U.S.C. § 2680(c)(4). Diaz pled guilty to violating the federal currency reporting statute, for which the cash he was carrying was subject to forfeiture. See 31 U.S.C. §

13

5317(c).  Accordingly, Diaz cannot benefit from § 2680(c)'s re-waiver of sovereign immunity, and there is no federal jurisdiction under the FTCA to hear Diaz's claim for return of the money.  See Adeleke, 355 F.3d at 154.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.