Reed O'Connor, UNITED STATES DISTRICT JUDGE
*667 Before the Court are Plaintiffs' Motion for Entry of Judgment and to Reconsider the Court's Dismissal of Plaintiffs' Claims for Refunds and Other Rulings (ECF No. 95), filed May 21, 2018; Defendants' Response (ECF No. 98), filed June 11, 2018; and Plaintiffs' Reply (ECF No. 99), filed June 25, 2018. Having considered the motion, briefing, and applicable law, the Court finds that it should be and is hereby GRANTED in part and DENIED in part .
I. BACKGROUND
Plaintiffs are the States of Texas, Indiana, Kansas, Louisiana, Nebraska, and Wisconsin ("Plaintiffs"). Am. Compl. 1, ECF No. 19. Defendants are the United States of America (the "Government"); the United States Department of Health and Human Services ("HHS"); Alex Azar, in his official capacity as Secretary of HHS; the United States Internal Revenue Service (the "IRS"); and David Kautter, in his official capacity as Acting Commissioner of the IRS (collectively, "Defendants"). Id. at 1-2.
On February 24, 2016, Plaintiffs filed their amended complaint, alleging that Defendants, in violation of the Patient Protection and Affordable Care Act (the "ACA"), the Administrative Procedure Act (the "APA"), and the United States Constitution, required them to pay the ACA's Health Insurance Provider Fee (the "HIPF").Id. at 3-19. The ACA imposed the HIPF on medical providers but exempted the states from paying it. See Mar. 5, 2018 Mem. Op. & Order 1-9, ECF No. 88. Notwithstanding Congress's exemption of the states in the ACA, HHS enacted a regulation (the "Certification Rule") that empowered a private actuarial board to require Plaintiffs to account for the HIPF in payments to their respective managed care organizations ("MCOs")-the medical providers who contract with Plaintiffs to service their Medicaid recipients. See id. Plaintiffs' amended complaint challenged the legality and constitutionality of both the HIPF and the Certification Rule. See Am. Compl. 19-29, ECF No. 19.
Plaintiffs asserted ten counts in their amended complaint, claiming: (1) the HIPF violates Article I's Spending Clause and the Tenth Amendment, thereby entitling Plaintiffs to declaratory and injunctive relief (Counts I, IV, VI, VIII, IX, and X-collectively, the "HIPF claims"); (2) the Certification Rule violates Article I's Vesting Clause, the APA, and the ACA, thereby entitling Plaintiffs to declaratory relief (Counts II, III, and V-collectively, the "Certification Rule claims"); and (3) Plaintiffs are entitled to a tax refund of their HIPF payments under 28 U.S.C. § 7422 (Count VII-the "Tax Refund claim"). See ion index="1" url="https://cite.case.law/citations/?q=28%20U.S.C.%20%C2%A7%207422">id. Plaintiffs also made thirteen requests for relief in their concluding prayer, including declaratory relief, injunctive relief, a tax refund, and "such other and further relief to which [Plaintiffs] are justly entitled at law and in equity." Id. at 27-29.
On August 4, 2016, in an order considering a motion to dismiss, the Court dismissed the Tax Refund claim in Count VII. See Aug. 4, 2016 Mem. Op. & Order 18-21, ECF No. 34. The Court found that Plaintiffs were not entitled to a HIPF refund under 28 U.S.C. § 7422 because Plaintiffs "were neither directly subject to the *668 HIPF, nor actually paid the relevant tax on behalf of the taxpayer assessed." Id. at 21. Accordingly, the Court found that Plaintiffs-though admittedly required to pay the HIPF indirectly-were not "taxpayers" under the Internal Revenue Code (the "IRC"), and therefore the IRC, as interpreted by the Supreme Court's decision in United States v. Williams , 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995), barred the Tax Refund claim. See Aug. 4, 2016 Mem. Op. & Order 18-21, ECF No. 34.
Next, on March 5, 2018, the Court granted partial summary judgment for Plaintiffs, finding Plaintiffs entitled to judgment as a matter of law on two of their Certification Rule claims in Count V, and finding Defendants entitled to judgment as a matter of law on all other counts except Count VII (which the Court previously dismissed). See Mar. 5, 2018 Mem. Op. & Order, ECF No. 88. Out of Plaintiffs' thirteen prayers for relief, the Court granted only declaratory relief, declaring the Certification Rule unlawful under both the Constitution and the APA. See ids="1340384" index="8" url="https://cite.case.law/us/514/527/">id.
In its summary judgment order, the Court did not address whether Plaintiffs were entitled to equitable disgorgement. See Mar. 5, 2018 Mem. Op. & Order, ECF No. 88.[1] Nor did the Court fully address Plaintiffs' requests for injunctive relief. In Count IX-reiterated in ¶ I of the concluding prayer-Plaintiffs requested a permanent injunction against Defendants from prospectively collecting the HIPF. See Am. Compl. 26, 28, ECF No. 19. The Court denied this request and granted summary judgment for Defendants on Count IX because Plaintiffs did not establish that the HIPF itself was unlawful. See Mar. 5, 2018 Mem. Op. & Order 61, ECF No. 88. However, the Court did not address Plaintiffs' requests in ¶¶ J-K for a permanent injunction against Defendants from either: (1) denying Medicaid funds to Plaintiffs based on their refusal to pay the HIPF; or (2) refusing to approve Plaintiffs' proposed Medicaid capitation rates based on Plaintiffs' failure to account for the HIPF. See ids="1340384" index="9" url="https://cite.case.law/us/514/527/">id.
Because the Court has not yet entered final judgment in this case, the Court's August 4, 2016 Order dismissing Count VII, and its March 5, 2018 Order rendering summary judgment on all other counts, are both interlocutory. See FED. R. CIV. P. 54(b). Plaintiffs' instant motion moves the Court to: (1) reconsider its March 5, 2018 finding that the HIPF is a tax for purposes of the Anti-Injunction Act ("AIA"); (2) reconsider its March 5, 2018 Order declaring the Certification Rule unlawful but not disgorging Plaintiffs' past HIPF payments; (3) reconsider its August 4, 2016 dismissal of the Tax Refund claim in Count VII; and (4) enter a final judgment that includes a permanent injunction prohibiting Defendants from "impos[ing] liability for the [HIPF] upon Plaintiffs and their agencies." See Pls.' Mot. Recons., ECF No. 95; Prop. Final J., ECF No. 95-1. The Court construes Plaintiffs' motion for reconsideration as a motion to reconsider an interlocutory order under Rule 54(b).[2]
*669 II. LEGAL STANDARD
Federal Rule of Civil Procedure 54(b)"allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision ... [that] does not end the action.' " Austin v. Kroger Texas, L.P. , 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting FED. R. CIV. P. 54(b) ). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Id. at 336 (quotation marks omitted). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear ... [s]uch a motion requires the Court to determine whether reconsideration is necessary under the circumstances." Dallas Cnty., Tex. v. MERSCORP, Inc. , 2 F.Supp.3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted).
"[T]he power to reconsider or modify interlocutory rulings [under Rule 54(b) ] 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders [under Rule 59(e) ]." Austin , 864 F.3d at 337 (quoting Saint Annes Dev. Co. v. Trabich , 443 F. App'x 829, 832 (4th Cir. 2011) ). " Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e) ], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.' " Id. at 336-37 (quoting Cobell v. Jewell , 802 F.3d 12, 25 (D.C. Cir. 2015) ). Accordingly, in contrast to a Rule 59(e) motion, the district court may consider "new arguments" on a Rule 54(b) motion that the movant did not raise in prior briefing. See id. at 337.
III. ANALYSIS
Plaintiffs make four requests in their motion for reconsideration and entry of judgment. Plaintiffs ask the Court to reconsider: (1) its March 5, 2018 finding that the HIPF is a tax for purposes of the AIA; (2) its March 5, 2018 Order granting only declaratory relief under the Declaratory Judgment Act (the "DJA"), and not disgorgement of Plaintiffs' unlawful HIPF payments under the APA; and (3) its August 4, 2016 dismissal of the Tax Refund claim in Count VII. See generally Pls.' Mot. Recons., ECF No. 95. Plaintiffs also ask the Court to enter a final judgment that permanently enjoins Defendants from "impos[ing] liability for the [HIPF] upon Plaintiffs and their agencies." Prop. Final J., ECF No. 95-1. Applying the rubric of Rule 54(b), the Court considers each request in turn.
A. The HIPF is a "Tax" Under the AIA but a "Fee" Under the DJA and APA
Plaintiffs argue that while the HIPF may be a tax for constitutional purposes, the Court incorrectly found that the HIPF is a tax for purposes of the AIA, DJA, and APA. See Pls.' Mot. Recons. 2-4, ECF No. 95. Plaintiffs therefore ask the Court to reconsider its finding that the HIPF is a tax under the AIA and to instead find that the HIPF is a "fee" under the AIA, DJA, and APA. See id. Defendants do not respond to that argument. See generally Defs.' Resp., ECF No. 98.[3]
*670 The AIA states, "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Plaintiffs' amended complaint challenged the constitutionality and legality of the HIPF, and the Court determined that the HIPF was a tax for purposes of the AIA. See Mar. 5, 2018 Mem. Op. & Order 23, ECF No. 88.[4] But the Court found that the AIA did not bar Plaintiffs' HIPF claims because those claims fell within the exception in South Carolina v. Regan , 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). See id. at 24-27. Moreover, the Court found that the AIA did not bar the Certification Rule claims, because Plaintiffs did not assert those claims "for the purpose of restraining the assessment or collection of any tax." Id. at 27 ("Plaintiffs ... assert these Certification Rule claims ... to ensure that the proper entity pays the full amount of the disputed tax." (citation omitted) ).
To determine whether Congress intended the HIPF to be a "tax" or a "fee," the Court must begin with the text of the ACA, ascertaining its plain meaning by considering its language and design as a whole. See K Mart Corp. v. Cartier, Inc. , 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). The plain language of the ACA makes clear that Congress designed the HIPF as a "fee" merely to be treated like a "tax" for purposes of the IRC. See The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 9010, 124 Stat. 119, 865-68 (2010) [hereinafter "ACA"]. Indeed, Congress referred to the HIPF as a "fee" fourteen times in the statutory text, and only referred to the HIPF as a "tax" in subsection (c), where it delineates the HIPF's "tax treatment" under the IRC. See ACA § 9010. The following excerpt from the statutory text shows that Congress clearly intended the HIPF to be a "fee":
Sec. 9010. [ 26 U.S.C. 4001 note prec.] IMPOSITION OF ANNUAL FEE ON HEALTH INSURANCE PROVIDERS
(a) IMPOSITION OF FEE. - ...
(b) DETERMINATION OF FEE AMOUNT. -
(1) IN GENERAL. -With respect to each covered entity, the fee under this section for any calendar year ...
(3) SECRETARIAL DETERMINATION. -The Secretary shall calculate the amount of each covered entity's fee for any calendar year ...
(c) COVERED ENTITY. -
(1) IN GENERAL. -For purposes of this section, the term "covered entity" means any entity which provides health insurance for any United States health risk during the calendar year in which the fee under this section is due....
(d) TAX TREATMENT OF FEES. -The fees imposed by this section-
(1) for purposes of subtitle F of the Internal Revenue Code of 1986, shall be treated as excise taxes with respect to which only civil actions for refund under procedures of such subtitle shall apply, and *671 (2) for purposes of section 275 of such Code shall be considered to be a tax described in section 275(a)(6)....
See id. (emphasis added).
"Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." Nat'l Fed'n of Indep. Bus. v. Sebelius , 567 U.S. 519, 544, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) [hereinafter " NFIB "]. Accordingly, Congress's decision to describe the HIPF as a "fee" that is merely "treated" like a "tax" for purposes of the IRC evinces Congress's clear intention to make the HIPF a "fee" for all purposes other than its tax treatment under the IRC. See ACA § 9010. The Court therefore clarifies that the HIPF is indeed a "fee" under the APA and the DJA.[5]
With respect to the AIA, however, the Supreme Court held in NFIB that the AIA applies to an exaction that the enacting statute treats as a tax for purposes of the IRC. See NFIB , 567 U.S. at 544-45, 132 S.Ct. 2566. Accordingly, the Court correctly found in its March 5, 2018 Order on summary judgment that the HIPF is a "tax" for purposes of the AIA. See Mar. 5, 2018 Mem. Op. & Order 23-24, ECF No. 88. The Court therefore DENIES Plaintiffs' motion to reconsider this finding.
B. Plaintiffs Are Entitled to Equitable Disgorgement
Plaintiffs next argue they are entitled to equitable disgorgement of their HIPF payments under the APA, even if they are not entitled to a tax refund of those payments under 28 U.S.C. § 7422. See Pls.' Mot. Recons. 4-7, ECF No. 95. Defendants respond that Plaintiffs' disgorgement request is a "new argument" that Plaintiffs waived by failing to raise it in their summary judgment briefing. See Defs.' Resp. 1-2, ECF No. 98. Defendants also argue that Plaintiffs' request is a suit for "money damages," which is not included in the APA's sovereign immunity waiver in § 702 and is therefore jurisdictionally barred. See id. at 16-18.
The Court begins by finding that it may properly grant Plaintiffs' request for equitable disgorgement on a Rule 54(b) motion even if Plaintiffs did not specifically request it in their summary judgment briefing. First, Plaintiffs' adequately pled equitable disgorgement. Plaintiffs' amended complaint includes a catch-all request for "such other and further relief to which [Plaintiffs] are justly entitled at law and in equity." See Am. Compl. 29, ECF No. 19. The Supreme Court has held that this form of catch-all pleading allows the district court to award any appropriate relief at law or in equity-including relief that the parties do not specifically request in subsequent briefing. Cf. Whole Woman's Health v. Hellerstedt , --- U.S. ----, 136 S.Ct. 2292, 2307, 195 L.Ed.2d 665 (2016), as revised (June 27, 2016). Moreover, parties may make new arguments on a Rule 54(b) motion for reconsideration that they did not make in their earlier briefing. See Austin , 864 F.3d at 337.[6] Plaintiffs properly requested equitable disgorgement in *672 their amended complaint and may properly argue for it now.
The Court next considers whether the APA waives sovereign immunity for Plaintiffs' request for disgorgement. The APA waives immunity for "relief other than money damages." 5 U.S.C. § 702. "The term 'money damages' ... normally refers to a sum of money used as compensatory relief." Bowen v. Massachusetts , 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Accordingly, while § 702 of the APA prohibits compensatory relief-"monetary compensation for an injury to [the plaintiff's] person, property, or reputation"-it waives immunity for "an equitable action for specific relief-which may include ... 'the recovery of specific property or monies ....' " Id. at 893, 108 S.Ct. 2722 (emphasis added) (quoting Larson v. Domestic & Foreign Commerce Corp. , 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) ). In determining the scope of § 702's sovereign immunity waiver, the Court must "narrowly construe" the term "money damages." Phillips Petroleum Co. v. Johnson , No. 93-1377, 1994 WL 484506, at *1 (5th Cir. Sept. 7, 1994). As such, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' " Bowen , 487 U.S. at 893, 108 S.Ct. 2722.
Therefore, Section 702 waives sovereign immunity for all equitable remedies that provide "specific" relief, but does not waive immunity for legal or equitable remedies that provide "substitute" relief. See Dep't of the Army v. Blue Fox, Inc. , 525 U.S. 255, 262-63, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) ; Bowen , 487 U.S. at 895, 108 S.Ct. 2722 ("Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." (emphasis in original) (quotation marks omitted) ); see also St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency , 556 F.3d 307, 317-18 (5th Cir. 2009) (holding that § 702 waives immunity for "specific relief" to force an agency to comply with the law, even if that relief "result[s] in the payment of money"). The Supreme Court and the Fifth Circuit have recognized at least two forms of "specific" relief included within § 702's waiver. First, § 702 waives immunity for "a suit seeking to enforce [a] statutory mandate ... which happens to be one for the payment of money." Bowen , 487 U.S. at 900, 108 S.Ct. 2722 ; see also Anderson v. Jackson , 556 F.3d 351, 359 (5th Cir. 2009) ("Suits seeking money may go forward under § 702 where the statute in question specifically mandates the payment of money."). Second, § 702 waives immunity for the return of confiscated physical property, including currency. See, e.g. , Armendariz-Mata v. U.S. Dep't of Justice, Drug Enf't Admin. , 82 F.3d 679, 682 (5th Cir. 1996) (finding jurisdiction under § 702 to grant an "equitable claim for the return of $8,819 in currency" confiscated by the Drug Enforcement Administration).
Plaintiffs ask for disgorgement of their HIPF payments, characterizing their request as "specific" relief that gives them "the very thing to which [they are] entitled"-their HIPF funds. See Pls.' Mot. Recons. 12-15, ECF No. 95. Defendants respond that Plaintiffs actually seek "substitute" relief-the cash equivalent of their HIPF funds. See Defs.' Resp. 17-18, ECF No. 98 ("Nor do Plaintiffs seek the return of specific res (including money) that the federal government seized or otherwise obtained from them...."). According to Defendants, Plaintiffs have not shown that the specific dollar bills that they paid to their MCOs in their capitation rates to *673 cover the HIPF are the same specific dollar bills that MCOs used to pay the HIPF to Defendants. See id. Defendants therefore argue that "the Court could not order Defendants to 'return' the specific funds that Plaintiffs paid to MCOs ... to account for the HIPF because Defendants do not have (and never had) those specific funds." Id. at 18. Defendants contend that "[t]he most the Court could do is require Defendants to pay Plaintiffs the 'monetary equivalent' of those funds," which would be "substitute" damages and therefore "money damages" under the APA. Id.
In support of this argument, Defendants cite Modoc Lassen wherein the Tenth Circuit held that "the district court awarded the Tribes money damages when it ordered the Department of Housing and Urban Development ("HUD") to compensate them using funds from grant years other than the grant years during which HUD wrongfully collected the alleged overpayments." Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev. , 881 F.3d 1181, 1196 (10th Cir. 2017) (emphasis added), petition for cert. filed , (U.S. Mar. 22, 2018) (No. 17-1353). The Tenth Circuit reasoned that the requested funds were "money damages" because they were a "substitute for a suffered loss"-funds from different grant years where the plaintiff did not overpay-and not "the very thing to which [the plaintiff] was entitled"-funds from the grant years where the plaintiff actually did overpay. Id. at 1196-98 (emphasis in original) (quotation marks omitted). Defendants argue that, as in Modoc Lassen , Plaintiffs must trace their specific HIPF funds in order to obtain an equitable return of those funds under § 702-which Plaintiffs cannot do here. See Defs.' Resp. 22-24, ECF No. 98.
Defendants also cite Diaz v. United States , 517 F.3d 608 (2d Cir. 2008). In that case, United States Customs ("Customs") seized $91,743.00 in currency from Diaz and refused to return it. Diaz , 517 F.3d at 609-10. Customs then administratively forfeited the seized currency and disbursed it to other agencies-the Queens County District Attorney's Office and the United States Treasury Forfeiture Fund. Id. at 610. Five years later, Diaz filed a suit in equity seeking to reclaim the currency from Customs. Id. The Second Circuit held that, because Customs disbursed the seized currency, Customs could only provide its "monetary equivalent," which would be "money damages" under the APA and not an equitable return of property. Id. at 612-13. The Fifth Circuit reached a similar conclusion in Armendariz-Mata , holding that if the government seizes physical property (like a car or firearm) and forfeits it-such that the physical res is lost-the plaintiff's request for the "monetary equivalent" of the lost property is not a request for equitable relief but for "money damages" under the APA. 82 F.3d at 682.[7] Defendants argue that because the res at issue in this case-Plaintiffs' specific HIPF funds-is lost and untraceable, the Court can only order Defendants to pay the "monetary equivalent" of those funds. See Defs.' Resp. 22-24, ECF No. 98.
The Court agrees with Defendants that ordering Defendants to disgorge Plaintiffs'
*674 HIPF payments would ordinarily constitute "substitute" relief barred by sovereign immunity because Plaintiffs can no longer trace the res -the specific HIPF funds-and can only ask Defendants to return the "monetary equivalent" of Plaintiffs' past HIPF payments. The APA only waives immunity for "specific" relief, see Blue Fox , 525 U.S. at 262-63, 119 S.Ct. 687, and the Court finds that ordering Defendants to return the "monetary equivalent" of fungible cash payments is ordinarily not "specific" relief. Cf. Modoc Lassen , 881 F.3d at 1196-98 ; Diaz , 517 F.3d at 609-12.
However, Plaintiffs alternatively request disgorgement of their HIPF funds as a means of enforcing the ACA's statutory mandate exempting states from paying the HIPF. See Pls.' Mot. Recons. 12-13, ECF No. 95 (arguing that the Court may order disgorgement to force an agency to "comply with a mandatory funding requirement"). Defendants respond that "Plaintiffs cannot point to any statute or regulation that entitles them to receive any specific funds from the federal government...." Defs.' Resp. 23, ECF No. 98. Plaintiffs reply that two statutes-the ACA, which exempts the states from paying the HIPF, and the APA, which waives sovereign immunity for specific relief-entitle them to recover their HIPF payments. See Pls.' Reply 4, ECF No. 99.
The Court finds that the APA and the ACA entitle Plaintiffs to disgorgement because the APA waives immunity for "a suit seeking to enforce [a] statutory mandate," and disgorgement in this case enforces Defendants' compliance with the ACA's mandate specifically exempting the states from paying the HIPF. Bowen , 487 U.S. at 900, 108 S.Ct. 2722 ; see ACA § 9010(c). The Supreme Court has held that a district court may grant equitable disgorgement as a form of specific relief to enforce compliance with a statutory mandate. See Porter v. Warner Holding Co. , 328 U.S. 395, 396-403, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). In Porter , the government sought to disgorge money that the defendant acquired in violation of the Emergency Price Control Act, as well as injunctive relief against future violations of the Act. See ids="377260" index="75" url="https://cite.case.law/us/328/395/#p396">id. at 396-97, 66 S.Ct. 1086 ("The complaint was later amended to seek ... 'a refund of all amounts collected by defendant from tenants....' "). The district court granted injunctive relief but denied disgorgement. Id. at 397, 66 S.Ct. 1086. The Supreme Court later reversed the lower court's denial of disgorgement, holding that, in exercising its inherent equitable jurisdiction, the district court could order disgorgement "to enforce compliance with the Act." Id. at 398-400, 66 S.Ct. 1086. The Supreme Court reasoned that "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains." Id.
Here, Plaintiffs similarly request both disgorgement and injunctive relief to force Defendants to comply with the ACA's statutory exemption. See Am. Compl. 26-29, ECF No. 19. While the ACA does not explicitly command Defendants to disgorge HIPF monies improperly collected from the states-in the same way that the statute in Bowen stated that the government "shall pay" for Medicaid services-it does contain an exemption that explicitly prohibits Defendants from collecting the HIPF from the states in the first place. See Bowen , 487 U.S. at 900, 108 S.Ct. 2722 ; ACA § 9010(c) (excluding states from the definition of "covered entity"). The Court found in its March 5, 2018 Order that by virtue of Defendants' administrative scheme, the Certification Rule unlawfully required Plaintiffs to account and pay for the HIPF, amounting to an end-run around Congress's express intent. See March 5, 2018 Mem. Op. & Order 40-47, *675 ECF No. 88. Where the law provides no remedy, courts are "clearly authorize[d] ... to decree restitution in order to give effect to the policy of Congress." Porter , 328 U.S. at 400, 66 S.Ct. 1086.
The Court may therefore exercise its inherent and broad equitable jurisdiction to order Defendants to disgorge Plaintiffs' HIPF monies in order to enforce the ACA's statutory mandate exempting the states from payment. Cf. Porter , 328 U.S. at 398-400, 66 S.Ct. 1086 ("Future compliance [with a statutory mandate] may be more definitely assured if one is compelled to restore one's illegal gains."). Accordingly, the Court finds that Plaintiffs' request for disgorgement is "a suit seeking to enforce [a] statutory mandate ... which happens to be one for the payment of money." Bowen , 487 U.S. at 900, 108 S.Ct. 2722. As such, Plaintiffs' request falls within § 702's sovereign immunity waiver. Cf. id.
Having found jurisdiction to consider Plaintiffs' disgorgement request, the Court finds that Plaintiffs are entitled to disgorgement of their HIPF payments. Defendants unlawfully required Plaintiffs to account for and pay the HIPF in their MCO capitation rates and have no right to retain those funds that properly belong to Plaintiffs. Indeed, the Court finds that this is a paradigmatic case for equitable relief. The Court dismissed Plaintiffs request for a tax refund due to a legal technicality: Plaintiffs were not "taxpayers" under the IRC because they "were neither directly subject to the HIPF, nor actually paid the relevant tax on behalf of the taxpayer assessed." Aug. 4, 2016 Mem. Op. & Order 21, ECF No. 34. Courts of equity exist for precisely these situations, to afford complete relief where a strict adherence to the text or precedent governing remedies at law prevents the plaintiff from fully recovering. The Court therefore GRANTS Plaintiff's motion to reconsider the Court's grant of declaratory relief without disgorgement.
C. Reconsidering Dismissed Count VII is Unnecessary
"[A] motion to reconsider under Rule 54(b)... requires the Court to determine whether reconsideration is necessary under the circumstances." Dallas Cnty. , 2 F.Supp.3d at 950 (quotation marks omitted). Because the Court finds that Plaintiffs are entitled to equitable disgorgement of their HIPF payments-a remedy that gives Plaintiffs complete relief-the Court finds that it is unnecessary under these circumstances to reconsider its dismissal of Plaintiffs' request for a tax refund under the IRC. The Court therefore DENIES Plaintiffs' motion to reconsider the Court's dismissal of Count VII.
D. Plaintiffs Are Not Entitled to a Permanent Injunction
Plaintiffs' proposed final judgment requests a permanent injunction against Defendants "impos[ing] liability for the [HIPF] upon Plaintiffs and their agencies." See Prop. Final J., ECF No. 95-1. "Any injunctive relief is considered an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." Harris Cnty., Tex. v. CarMax Auto Superstores Inc. , 177 F.3d 306, 312 (5th Cir. 1999) (quotation marks omitted). For the Court to grant a request for a permanent injunction, Plaintiffs must establish: (1) actual success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) injury to the plaintiffs that outweighs injury to the defendant; and (4) no disservice to the public interest by granting the injunction. See ids="727248" index="93" url="https://cite.case.law/f3d/177/306/#p312">id. (articulating the standard for a preliminary injunction); see also *676 Amoco Prod. Co. v. Vill. of Gambell, AK , 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").
The Fifth Circuit's decision in Chacon controls this case. Chacon v. Granata , 515 F.2d 922, 925 (5th Cir. 1975). There, the city of San Antonio, Texas (the "City"), passed an ordinance annexing a large tract of land, including the plaintiffs' parcels, near Randolph Air Force Base (the "Base"). Id. at 923. The plaintiffs' complaint alleged that the annexation was the first step in a larger scheme by the City and the Base to deprive them of their annexed property through unlawful zoning ordinances. Id. The plaintiffs' complaint sought a permanent injunction against any further exercise of jurisdiction over the subject lands. Id. at 924. The district court denied the plaintiffs' challenge to anticipated zoning ordinances as premature, and the Fifth Circuit affirmed. Id. It held that, "[i]nsofar as it is premised on the eventual passage of unconstitutional zoning ordinances, plaintiffs' complaint faces an impossible burden of showing that any harm to them is imminent." Id. at 925 (emphasis added). The Fifth Circuit reasoned that, where "the legislative body has not yet acted," courts "must presume that when it does act it will respect the rights guaranteed by the Constitution." Id. This presumption derives from the presumption of constitutionality in statutory construction. If courts must assume that legislatures, in enacting past legislation, "acted with due regard for the constitutional rights of affected parties," then it must also assume that those legislatures will do so in the future. Id.
The same presumption applies in this case. As detailed in the Court's March 5, 2018 Order on summary judgment, HHS enacted the Certification Rule, which empowered a private entity-the Actuarial Standards Board (the "ASB")-to require Plaintiffs to account and pay for the HIPF in their MCO capitation rates in order to receive Medicaid funds. See Mar. 5, 2018 Mem. Op. & Order 3-9, ECF No. 88. The ASB accomplished this by requiring Plaintiffs to conform to Actuarial Standard of Practice ("ASOP") 49, which declared that capitation rates must account for the HIPF in order to be "actuarially sound" under federal law. See id. at 8. Under the Certification Rule, HHS would only approve capitation rates certified by private actuaries as complying with ASOP 49. See id. at 41-43. In this way, HHS disobeyed the ACA's clear statutory command exempting the states from paying the HIPF. However, Plaintiffs have not shown that HHS will, going forward, refuse to approve future MCO capitation rates that do not account for the HIPF. In lieu of the Court's declaration that the Certification Rule is unlawful, the Court must assume that HHS will follow the law going forward. Plaintiffs have not rebutted that presumption.[8]
Because Plaintiffs have not shown a substantial threat of irreparable injury, Plaintiffs have not carried their burden of establishing a need for permanent injunctive relief. The Court therefore DENIES Plaintiffs' request for a permanent injunction.
*677 IV. CONCLUSION
For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration and entry of judgment (ECF No. 95). The Court will issue a separate final judgment order pursuant to Federal Rule of Civil Procedure 58.
SO ORDERED on this 21st day of August, 2018 .

Plaintiffs requested equitable disgorgement in their amended complaint. See Am. Compl. 29, ECF No. 19 (praying for "such other and further relief to which [Plaintiffs] are justly entitled at law and in equity"). Moreover, in subsequent briefing related to the parties' motions for summary judgment, Plaintiffs clarified that they sought either "a refund or disgorgement" of their HIPF payments. Pls.' Opp. Defs.' Mot. Extend Time 4-5, ECF No. 60.

Plaintiffs style their motion as a "Motion ... to Reconsider the Court's Dismissal of Plaintiffs' Claims for Refunds And Other Rulings." Pls.' Mot. Recons., ECF No. 95. Though Plaintiffs do not specify whether they bring their motion under Rule 59(e) or Rule 54(b), Defendants concede that Plaintiffs bring their motion under Rule 54(b). See Defs.' Resp. 2-3, ECF No. 98.

In its March 5, 2018 Order, the Court observed that Plaintiffs themselves characterized the HIPF as a "tax" in their summary judgment briefing. See Mar. 5, 2018 Mem. Op. & Order 24 n.36, ECF No. 88. Here, the Court clarifies that Plaintiffs only characterized the HIPF as a tax for constitutional purposes and did not concede that the HIPF is a tax for purposes of the AIA, DJA, or APA. See Pls.' Reply Supp. Pls.' Mot. Summ. J. 12, ECF No. 66 ("Whether the HIPF is labeled a 'fee' or 'tax' by Congress, the AIA does not bar jurisdiction.").

Having so found, and for convenience, the Court referred to the HIPF as a tax throughout its March 5, 2018 Order. See generally Mar. 5, 2018 Mem. Op. & Order, ECF No. 88.

The DJA prohibits declaratory relief in cases "respect[ing] ... Federal taxes." 28 U.S.C. § 2201. Even if this prohibition would cover the Court's declaration that the Certification Rule is unlawful under Article I's Vesting Clause and the APA, the DJA would not apply here, because the HIPF is a "fee" under the statute.

Notably, Plaintiffs clarified during the summary judgment phase of the litigation that they desired either "a refund or disgorgement"-albeit in briefing on a continuance motion. See Pls.' Opp. Defs.' Mot. Extend Time 4-5, ECF No. 60.

These holdings dovetail with the common law's conceptual distinction between replevin, "[a]n action for the repossession of personal property wrongfully taken or detained by the defendant," Replevin , Black's Law Dictionary (10th ed. 2014), and trover, "the recovery of damages for the conversion of personal property, the damages generally being measured by the property's value." Trover , Black's Law Dictionary (10th ed. 2014). While both were actions at law, replevin had a more equitable character, such that in "rare cases," plaintiffs would "seek equitable relief to secure return of a chattel" rather than pursue the common law writ of replevin. 1 Dan B. Dobbs , Law of Remedies § 5.17(1), at 917 (2d ed. 1993).

Nor have Plaintiffs shown that a future requirement to pay the HIPF would constitute irreparable harm. Because the Court has found that Plaintiffs are entitled to equitable disgorgement of their past HIPF payments, see supra Part III.B, Plaintiffs may petition for equitable disgorgement of any unlawfully coerced HIPF payments in the future.