**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 22-1175**

————————

BISHOP OF CHARLESTON, d/b/a Roman Catholic Diocese of Charleston, a Corporation Sole; SOUTH CAROLINA INDEPENDENT COLLEGES AND UNIVERSITIES, INC.,

          Plaintiffs - Appellants,

     v.

MARCIA ADAMS, in her official capacity as the Executive Director of the South Carolina Department of Administration; BRIAN GAINES, in his official capacity as budget director for the South Carolina Department of Administration; HENRY DARGAN MCMASTER, in his official capacity as Governor of South Carolina,

          Defendants - Appellees,

    and

STATE OF SOUTH CAROLINA,

          Intervenor/Defendant – Appellee.

-------------------------------

AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE; BEND THE ARC: A JEWISH PARTNERSHIP FOR JUSTICE; CENTRAL CONFERENCE OF AMERICAN RABBIS; DISCIPLES CENTER FOR PUBLIC WITNESS; DISCIPLES JUSTICE ACTION NETWORK; EQUAL PARTNERS IN FAITH; GLOBAL JUSTICE INSTITUTE, METROPOLITAN COMMUNITY CHURCHES; HINDU AMERICAN FOUNDATION; INTERFAITH ALLIANCE FOUNDATION; MEN OF REFORM JUDAISM; NATIONAL COUNCIL OF JEWISH WOMEN; WOMEN OF REFORM JUDAISM; UNION FOR REFORM JUDAISM; ORANGEBURG SCHOOL DISTRICT; SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; NATIONAL EDUCATION ASSOCIATION; THE SOUTH CAROLINA EDUCATION ASSOCIATION; PUBLIC FUNDS

PUBLIC   SCHOOLS;   SOUTHERN   EDUCATION   FOUNDATION;
ADVANCEMENT PROJECT NATIONAL OFFICE,

                    Amici Supporting Appellees.

                    _____

Appeal from the United States District Court for the District of South Carolina, at
Charleston.  Bruce H. Hendricks, District Judge.  (2:21-cv-01093-BHH)

                    _____

Argued:  December 7, 2022                          Decided:  July 6, 2023

                    _____

Before THACKER, HARRIS, and HEYTENS, Circuit Judges.

                    _____

Vacated and remanded with instructions by unpublished per curiam opinion.

                    _____

**ARGUED:**  Daniel Robert Suhr, LIBERTY JUSTICE CENTER, Chicago, Illinois, for
Appellants.  Thomas T. Hydrick, OFFICE OF THE ATTORNEY GENERAL OF SOUTH
CAROLINA, Columbia, South Carolina; William Grayson Lambert, OFFICE OF THE
GOVERNOR OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees.  **ON
BRIEF:**  Jeffrey D. Jennings, LIBERTY JUSTICE CENTER, Chicago, Illinois; Richard
S. Dukes, Jr., TURNER PADGET GRAHAM & LANEY, P.A., Charleston, South
Carolina, for Appellants.  Christopher E. Mills, SPERO LAW LLC, Charleston, South
Carolina; Vordman Carlisle Traywick, III, ROBINSON GRAY STEPP & LAFFITTE,
LLC, Columbia, South Carolina; Thomas A. Limehouse Jr., Chief Legal Counsel, Michael
G. Shedd, Deputy Legal Counsel, OFFICE OF THE GOVERNOR OF SOUTH
CAROLINA, for Appellee Governor McMaster.  Alan Wilson, Attorney General, J. Emory
Smith, Jr., OFFICE OF THE ATTORENY GENERAL OF SOUTH CAROLINA,
Columbia, South Carolina, for Appellee State of South Carolina.  Eugene H. Matthews,
RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for
Appellees Marcia Adams and Brian Gaines.

                    _____

Unpublished opinions are not binding precedent in this circuit.

                    2

PER CURIAM:

The Bishop of Charleston and South Carolina Independent Colleges and Universities ("Appellants") challenge Article XI, Section 4 of the South Carolina Constitution ("Section 4"), which prohibits the use of public funds "for the direct benefit of any religious or other private educational institution." In their view, Section 4 violates the Equal Protection Clause of the Fourteenth Amendment and the Free Exercise Clause of the First Amendment because, although it is facially neutral, its enactment was motivated by both racial and religious discriminatory intent. Appellants' challenge arose after the South Carolina Supreme Court ruled that Section 4 prevented the Governor of South Carolina from awarding certain COVID-19 relief funds to private and religious schools, including Appellants. Additionally, after the South Carolina Supreme Court's ruling, the state's Department of Administration refused to disperse other COVID-19 relief funds to private and religious schools pending further judicial direction.

Because all of the funds at issue have been otherwise allocated and are no longer available, this case is moot. For the reasons that follow, we vacate the district court's decision and remand with instructions to dismiss the case.

I.

"Our jurisdiction under Article III is limited to cases and controversies." *Holloway v. City of Virginia Beach*, 42 F.4th 266, 273 (4th Cir. 2022) (citations omitted). The doctrine of mootness prevents us "from advising on legal questions 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Eden, LLC v. Justice*, 36 F. 4th 166, 169 (4th Cir. 2022) (quoting *Fleet Feet,*

3

*Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021)).  In other words, "federal courts may not opine on the merits of a case when doing so would have no practical effect on the outcome of the matter."  *Holloway*, 42 F.4th at 275 (internal quotation marks omitted) (citation omitted).  This limit applies "throughout the course of litigation, to the moment of final appellate disposition."  *Catawba Riverkeep Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotation marks omitted).  Thus, "a case may become moot after entry of a district court's judgment and while an appeal is pending." *Eden, LLC*, 36 F.4th at 169–70 (citation omitted).

Other Circuit Courts of Appeals have routinely deemed cases to be moot when there are no longer funds available from which the court could provide relief. *See, e.g.*, *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 778 F.3d 412, 417 (2d Cir. 2015) (dismissing as moot claims regarding funds that had since been reallocated); *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140–42 (2d Cir. 2010) (finding that case had become moot when federal agency had exhausted the congressional appropriations for the relevant grant program and sovereign immunity barred federal court from ordering that the contested amounts be paid from another source of funds); *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994) (concluding that case was moot when federal agency had contractually obligated its entire congressional appropriation, either through initial allocations or reallocations, and observing that "once the relevant funds have been obligated, a court cannot reach them in order to award relief"); *W. Va. Ass'n of Comty. Health Cntrs., Inc. v. Heckler*, 734 F.2d 1570, 1576–77 (D.C. Cir.

1984) (holding that claims were moot as to funds that had previously been awarded and thus were no longer were an available source for relief).

## II.

In March 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116–136, 134 Stat. 281 (Mar. 27, 2020), Congress established the Governor's Emergency Education Relief ("GEER") Fund and authorized the Secretary of Education to award emergency education relief grants to state governors with an approved application. *See* CARES Act §§ 18002–18008. The CARES Act also imposed a use-it-or-lose-it deadline, requiring states to allocate all funds, known as "GEER I" funds, within one year or return the funds to the federal government. *See id.* § 18002(d).

South Carolina Governor Henry McMaster applied for and received $48,467,924 in GEER I funds. In July 2020, Governor McMaster announced his plan to allocate approximately $32 million of the GEER I funds to assist the state's public and independent historically black colleges and universities, and to establish the Safe Access to Flexible Education ("SAFE") Grants Program, which would have provided need based grants for eligible students to attend participating private and independent schools. But after a challenge to Governor McMaster's plan, the South Carolina Supreme Court held that the proposed SAFE Grants Program violated Section 4 because it would have used public funds to provide a direct benefit to private schools. *See Adams v. McMaster*, 851 S.E.2d 703, 706 (S.C. 2020). Therefore, Governor McMaster reallocated the available GEER I funds to other programs prior to the state's May 11, 2021 one year deadline.

5

In December 2020, Congress passed the Coronavirus Response and Relief Supplemental Appropriations Act of 2021 ("CRRSAA"), Pub. L. 116-260, 134 Stat. 1182 (Dec. 27, 2020), which appropriated additional monies to the GEER Fund ("GEER II funds"). The CRRSAA required that GEER II funds be allocated by state governors by January 2022. Governor McMaster allocated all of the more than $21 million in GEER II funds he was awarded before that deadline.

In the midst of the GEER Fund allocation, in September 2020, the South Carolina General Assembly passed legislation to direct how other CARES Act funds that South Carolina had received would be allocated. *See* 2020 S.C. Act No. 154 ("Act 154"). Among other things, Act 154 authorized the South Carolina Department of Administration to oversee the distribution of $25 million for a nonprofit relief program, *id.* § 3(E), and $115 million for state and local governments and independent college and university expenditures, *id.* § 3(G). Importantly, the General Assembly directed that the expenditures Act 154 authorized were to come from "the remaining portion of the CARES Act funds that remain on deposit in the Coronavirus Relief Fund." *Id.* at § 1. Though Act 154 would have allowed independent colleges and universities to apply for funds, the Department of Administration "refrain[ed] from disbursing money to independent colleges and universities under the Act without further judicial direction," J.A. 307[1], as a result of the South Carolina Supreme Court's decision in *Adams*.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

Because they were not permitted to apply for or receive GEER funds or Act 154 funds, Appellants filed this lawsuit challenging the constitutionality of Section 4. Appellants sought a declaration that Section 4 was unconstitutional, injunctive relief allowing them the opportunity to apply for GEER funds and Act 154 funds, and nominal and compensatory damages. In their Amended Complaint, Appellants named Marcia Adams, in her official capacity as the executive director of the South Carolina Department of Administration; Brian Gaines, in his official capacity as budget director for the South Carolina Department of Administration; and Governor McMaster, in his official capacity as Governor of South Carolina; and the State of South Carolina later intervened (collectively, "Appellees").

After discovery, the parties filed cross motions for summary judgment. Appellants argued that Section 4 was unconstitutional because it was the result of or motivated by racial and religious animus. For their part, Appellees disagreed that Section 4 was the result of racial or religious animus, and they asserted that Appellants had failed to demonstrate otherwise. In considering the motions for summary judgment, the district court first held that insofar as Appellants sought damages against Adams, Gaines, and Governor McMaster in their official capacities, sovereign immunity pursuant to the Eleventh Amendment barred relief. Additionally, the district court determined that it lacked jurisdiction over Appellants' GEER fund claims for a number of reasons, including that the issue was moot because Governor McMaster has fully allocated all GEER I and II funds. But because there was not evidence that the Act 154 funds had been exhausted when the district court issued its order in February 2022, the district court considered the

7

merits of Appellants' claims. Ultimately, the district court upheld Section 4, finding that Appellants could not demonstrate that Section 4 was motivated by racial or religious discriminatory intent. The district court thus granted summary judgment in favor of Appellees and dismissed the case.

In their opening brief in this appeal, Appellants argued that the district court erred in upholding the constitutionality of Section 4. Of note, however, Appellants did not challenge the district court's ruling as to sovereign immunity or its determination that Appellants' claims as to the GEER funds were moot. In their Response, Appellees not only argued the merits with respect to Section 4, but also argued that the entire case is now moot because in June 2021, the South Carolina General Assembly enacted the 2021–2022 Appropriations Act (the "Appropriations Act"), 2021 S.C. Act No. 94, Part 1.B, 118.18(A)(5). The Appropriations Act reallocated all monies remaining in South Carolina's Coronavirus Relief Fund, including all Act 154 funds. In reply, Appellants only disputed whether Appellees had sufficiently demonstrated that there were no Act 154 funds remaining. Indeed, Appellants noted that if this court were to determine that "the case is in fact moot because the Act 154 and GEER I and II funds are all irretrievably gone, the proper response [would be] to vacate the judgment below and remand for dismissal of the case as moot." Appellants' Reply Br. at 4–5.

After briefing was complete, Appellees filed a "Suggestion of Mootness," further advising the court that all of the Act 154 funds have been not only reallocated but "have actually already been dispersed." *See* ECF No. 80, Suggestion of Mootness at 5. In support, Appellees attached a Declaration of Brian Gaines, in his official capacity as the

Director of the Executive Budget Office in the South Carolina Department of Administration, which confirmed that there are no funds remaining in South Carolina's Coronavirus Relief Fund. In response to the Suggestion of Mootness, Appellants did not contend that their Act 154 claims continue to present a live controversy. Instead, Appellants argued, for the first time, that their claims for nominal and compensatory damages were not barred by sovereign immunity, such that this court can continue to address the merits of Section 4's constitutionality.

## III.

As an initial matter, Appellants' have missed the opportunity to argue that they are entitled to compensatory and nominal damages. "[A] party waives an argument by failing to present it in its opening brief or failing to 'develop [its] argument' -- even if [its] brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC.*, 856 F.3d 307, 316 (4th Cir. 2017) (citation omitted) (alterations in original)). The district court held that sovereign immunity barred monetary relief and Appellants did not challenge that ruling in their opening brief. Therefore, it is waived.

As to Appellants' claims for injunctive relief, this case has clearly become moot. Appellees have sufficiently demonstrated that all of the GEER I and II funds, as well as the Act 154 funds,[2] have been allocated. Therefore, even if we were to rule in Appellants' favor on the merits, we could not provide meaningful injunctive relief because there are no

---

[2] Appellee's Suggestion of Mootness was sufficient to satisfy the court that all Act 154 funds have been otherwise allocated. By virtue of our decision in this case, the pending motion to dismiss, ECF No. 80, is granted.

9

longer any funds for which Appellants could apply.  Indeed, Appellants conceded this point at oral argument.  *See* Oral Argument 7:15–7:25, *Bishop of Charleston v. Adams*, No. 22-1175 (4th Cir. Dec. 7, 2022) https://www.ca4.uscourts.gov/OAarchive/mp3/22-1175-20221207.mp3 (Q: "there is no dispute . . . that [Appellants'] claim for injunctive relief is moot now?" A: "Yes, I believe that'd be right.").

## IV.

For the foregoing reasons, we vacate the district court's decision and remand this case with instructions that it be dismissed.

*VACATED AND REMANDED WITH INSTRUCTIONS*